UNITED STATES of America, Appellee,

v.

**John Edward EMERY,**
**Defendant-Appellant.**

No. 75–1420.

United States Court of Appeals,
First Circuit.

Argued June 4, 1976.
Decided Sept. 24, 1976.

Arthur D. Serota, Springfield, Mass., for appellant.

James E. O'Neil, Asst. U.S. Atty., Boston, Mass., with whom James N. Gabriel, U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

McENTEE, Circuit Judge.

The central issue in this case, the propriety of the government's use of an electronic beeper without a warrant, comes before us in a rather unusual factual context. On September 13, 1975, a jury found appellant guilty on a four-count indictment which charged violations of 21 U.S.C. §§ 841(a)(1), 846, 963 and 18 U.S.C. § 2. (The same jury found appellant's codefendant not guilty.) The crimes of which appellant was convicted all involved a quantity of cocaine which the government successfully linked to him. In order to explain the source of the government's evidence linking appellant and the cocaine, we must describe the investigative efforts of a number of government agents in various locations.

On December 13, 1974, customs agents in Miami opened two packages addressed to one Jeremy Carpenter of North Hatfield, Massachusetts, bearing a return address in Cali, Colombia. Each package contained a sound speaker and also a substance which the agents believed to be cocaine. The agents resealed the packages and forwarded them to Boston, where agents of the Postal Service and of the Drug Enforcement Administration reopened them and conducted a field test which confirmed that the substance in the packages was cocaine.

On January 5, 1975, plans were made for a controlled delivery of the contraband in North Hatfield. The federal agents went to the North Hatfield post office on the following day and maintained surveillance. At some point they inserted into the two packages an electronic "beeper,"[1] but they did not obtain a warrant for this purpose.[2] At approximately 4:30 p. m. on January 6, Carpenter went to the post office and picked up the two packages in question. The agents followed him to his apartment where they maintained surveillance and monitored the beeper's signal. A search warrant was then obtained in Boston and was brought to North Hatfield at approximately 7 p. m. The agents did not, however, seek to enter the apartment at that time, but rather continued their surveillance. They observed Emery and another person enter Carpenter's apartment. Later, at approximately 9 p. m., the agents noticed that the beeper's signal indicated that the packages had been opened. (See note 1 *supra.*) The agents thereupon decided to enter Carpenter's apartment and execute the search warrant. As they entered the building, however, the packages in question were dropped from a window. (It is undisputed on appeal that it was Emery who dropped the packages.) The cocaine in the packages was crucial evidence against Emery at his trial, the court having denied a motion to suppress. *United States v. Carpenter,* 403 F.Supp. 361 (D.Mass.1975).

Appellant first questions the legality of the warrantless search of the packages in Miami, contending that such a search at the border would have been proper only if the officials had "reasonable grounds to suspect" the presence of contraband. The district court rejected this argument, quoting from *United States v. Odland,* 502 F.2d 148, 151 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974): ". . .

---

1. The district court described the "beeper" as follows:

    "This device was designed to emit a signal which could be monitored by a radio receiver. The signal would be altered when the 'beeper' was disturbed. In this case the change would inform one monitoring the signal that one of the packages had been opened. The device is a metal-encased object about the size of a cigarette package. It is not capable of recording or transmitting anything of a verbal nature; its sole function is to emit a radio signal. . . ."

2. The district court found that the decision to use the beeper was made by the federal agents on January 2. At no time, however, did they seek a warrant to authorize their placing the beeper in the package. And when, on January 6, they sought a warrant for the apartment of Jeremy· Carpenter, their supporting affidavit made no mention of the beeper.

the Government is free to spot-check incoming mail at the point of entry, or to inspect all such mail, or to inspect any such mail which attracts the inspector's attention." We agree with the holding in *Odland* at least insofar as it concerns packages as opposed to first class letters. Such a rule is fully consistent with our own holdings relative to border searches of luggage and of the person (other than strip searches). *See United States v. Kallevig*, 534 F.2d 411, 413 n. 4 (1st Cir. 1976); *United States v. Stornini*, 443 F.2d 833, 835 (1st Cir.), *cert. denied*, 404 U.S. 861, 92 S.Ct. 162, 30 L.Ed.2d 104 (1971).

▪ Appellant next attacks the sufficiency of the affidavit which accompanied the application for the warrant to search Carpenter's apartment. He argues that the affidavit failed to identify the affiant's sources of information. It is clear, however, when one reads the whole affidavit "in a commonsense and realistic fashion," *United States v. Ventresca*, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965) that the unidentified sources were other government agents involved in this case. The magistrate could properly have accorded some presumptive reliability to the information provided by government agents, whereas if anonymous lay informants were involved the government would have to provide him with a more substantial basis for a conclusion as to reliability. *See United States v. Dauphinee*, 538 F.2d 1, 3–5 (1st Cir. 1976). While it might have been better practice for the affiant to have furnished the magistrate with additional information concerning his sources, we agree with the district court that under the circumstances of this case the affidavit was at least minimally adequate.

▪ We turn next to the most important and difficult issue raised by this appeal: whether the warrantless insertion of the beeper into the packages was unconstitutional or otherwise illegal and requires suppression.[3] To resolve this question, we must first decide whether a person's reasonable expectations of privacy preclude a surreptitious installation of an electronic beeper such as occurred in this case. *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *United States v. Cruz Pagan*, 537 F.2d 554, 557 (1st Cir. 1976); *Ouimette v. Howard*, 468 F.2d 1363, 1365 (1st Cir. 1972). To the best of our knowledge, the only relevant decision of a federal appellate court requiring suppression because of the use of electronic beepers is that of the Fifth Circuit in *United States v. Holmes*, 521 F.2d 859 (1975), *aff'd en banc by an equally divided court*, 537 F.2d 224 (1976).[4] The panel in *Holmes*, applying the principles enunciated in *Katz v. United States, supra,* and *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), unanimously held that the warrantless attachment of an electronic beeper onto a motor vehicle in a parking lot violated the expectations of privacy of certain of the defendants. 521 F.2d at 865. And it ruled that, because of this fourth amendment violation, the district court had properly suppressed the evidence seized as a result of the information provided by the beeper.[5]

The case at bar is quite different from *Holmes*, however, in that the beeper was not attached to appellant's car (nor to his person, nor to an object legitimately possessed by him); rather, it was inserted into

---

**3.** The government argues for the first time on appeal that appellant is without standing to object to the insertion of the beeper into the packages addressed to Carpenter. We decline to consider this argument, however, since the government failed to raise it in any form in the district court. (In the sense in which we are presently referring to the concept of standing, it relates to a rule of practice rather than to a jurisdictional prerequisite. *Cf. Barrows v. Jackson*, 346 U.S. 249, 255–57, 73 S.Ct. 1031, 97 L.Ed.2d 1586 (1953).)

**4.** *Cf. United States v. Frazier*, 538 F.2d 1322 (8th Cir. 1976); *United States v. Perez*, 526 F.2d 859 (5th Cir. 1976). *Contra, United States v. Hufford*, 539 F.2d 32 (9th Cir. 1976), *rev'g in part, United States v. Martyniuk*, 395 F.Supp. 42 (D.Or.1975). *See also United States v. Bobisink*, 415 F.Supp. 1334 (D.Mass.1976). *See generally* Note, 29 Vand.L.Rev. 514 (1976).

**5.** It should be noted that the *Holmes* decision had not been issued at the time that the decision in the instant case was rendered.

a package containing *contraband,* property which he had no right to possess. Therefore, we need not decide whether we would agree with the panel in *Holmes,* because the appellant in the instant case could have had no reasonable expectation of privacy as to the contraband.[6] We simply hold that in inserting the beeper into the contraband, which had been legitimately discovered and constructively seized at the border, the government did not violate appellant's constitutionally protected freedom from unreasonable searches and seizures.[7]

*Affirmed.*

6. Because we uphold the government's insertion of the beeper in the circumstances presented here, we do not need to reach the question of whether the search warrant for Carpenter's apartment would have legitimated the search regardless of any concurrent illegality in the use of the beeper.

7. Nor did the use of the beeper in the circumstances described above violate any pertinent federal or state statutes. *See* 18 U.S.C. §§ 2510 *et seq.;* Mass.G.L. c. 272, § 99.