**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Earna Jean PRINGLE and Harold Elston, Defendants-Appellants.**

**No. 77–5177**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

July 20, 1978.

---

\* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

William L. Kirby, II, Columbus, Ga. (Court-appointed), for Pringle.

John C. Swearingen, Jr., Columbus, Ga. (Court-appointed), for Elston.

D. L. Rampey, Jr., U. S. Atty., Joseph M. Lawless, Asst. U. S. Atty., Macon, Ga., for plaintiff-appellee.

Before THORNBERRY, RONEY and HILL, Circuit Judges.

RONEY, Circuit Judge:

Defendants Earna Jean Pringle and Harold Elston appeal from their convictions for violating the federal drug laws. Defendants' principle contention on appeal is that customs agents searched an incoming international package mailed to Pringle's

address from Thailand, in violation of the Fourth Amendment of the United States Constitution and 19 U.S.C.A. § 482, one source of statutory authority for warrantless customs mail searches. Section 482 requires that the customs agents have "reasonable cause to suspect" that the item searched contains illegally imported merchandise. We need not decide whether such "reasonable cause to suspect" existed in the present case, for we find this search justified by another section of the customs laws, 19 U.S.C.A. § 1582, and the regulations thereunder. Those provisions authorize searches of *all* persons, baggage, merchandise, and *mail* entering the United States. No "probable cause" or "reasonable cause to suspect" is needed under those provisions. Such searches are constitutionally permissible. The Fourth Amendment prohibits only unreasonable searches and seizures. The courts have long held warrantless border searches, including mail searches, reasonable, without "probable cause" or any ground for "suspicion." The search thus satisfied the statutory and constitutional requirements, so the heroin discovered therein was properly admitted into evidence.

Defendants also contend: the search of Elston's car was unconstitutional, there was insufficient evidence to support their convictions, and the trial judge erred in his instructions to the jury. Finding all of these allegations meritless, we affirm.

## I. *The Warrantless Mail Search By Customs Agents*

On December 29, 1976, Harry Nance, a Customs Mail Specialist at the Varick Street Post Office in New York City, was inspecting packages which had arrived from outside the United States. Nance opened a package addressed to Elaine Grant, 310 Bragg Smith Street, Columbus, Georgia, which had come from Thailand. He opened it because he had been instructed by his supervisors to open all packages from Thailand, because the drug rate coming from Thailand is "very, very high." In the package, he found a pillowcase which contained

a plastic bag filled with a white powder, which Nance suspected was heroin. A chemical "field test" confirmed that the substance was indeed heroin.

■ Defendants contend that under these facts, Agent Nance did not have the "reasonable cause to suspect" required by 19 U.S.C.A. § 482 in order to conduct a warrantless search of incoming international mail. Section 482 provides that

Any of the officers or persons authorized to board or search vessels may . . search any trunk or envelope, wherever found, in which he may have a *reasonable cause to suspect* there is merchandise which was imported contrary to law . . . .

We need not decide whether "reasonable cause to suspect" existed here, for this search can be justified by another provision of the customs laws. Section 1582 provides that:

The Secretary of the Treasury may prescribe regulations for the search of persons and baggage . . . and all persons coming into the United States from foreign countries shall be liable to detention and search . . . under such regulations.

The implementing regulations authorize searches of *all* persons, baggage, merchandise, and *mail* entering the United States. 19 C.F.R. §§ 145.2, 162.6 (1977). Thus, § 145.2 of the regulations provides that:

All mail originating outside the Customs territory of the United States, whether sealed or unsealed, is subject to Customs examination . . . .

Based on these provisions, the Seventh Circuit has held that incoming international mail is

subject to search at the border merely because it was entering the United States from abroad; no other fact, and no suspicion particular to this envelope [package], is necessary under the regulation. . . Accordingly, the Government is free to spot-check incoming international mail at the port of entry, or to inspect all such mail, or to inspect any such mail which attracts the inspector's attention.

*United States v. Odland,* 502 F.2d 148, 150–151 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974). Other courts have agreed with the Seventh Circuit's conclusion.[1]

We agree with these courts' interpretation of § 1582 and Regulation § 145.2. Accordingly, Agent Nance was statutorily authorized to open this package, since it was entering the United States from Thailand, without any need to show a "reasonable cause to suspect" that it contained contraband.

This search must also be tested against the Fourth Amendment. Section 1582 and Regulation § 145.2 extend customs authority to search incoming international mail as far as is constitutionally permissible. The Fourth Amendment prohibits only unreasonable searches and seizures. The Seventh Circuit has specifically upheld the constitutionality of § 1582, as we do here. *United States v. Odland,* 502 F.2d 148, 151 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974). Both this Court, and more recently, the Supreme Court, have held warrantless searches of incoming international mail to be reasonable. *United States v. Ramsey,* 431 U.S. 606, 616–625, 97 S.Ct. 1972 (1977); *United States v. King,* 517 F.2d 350, 352–353 (5th Cir. 1975).

The Supreme Court in *Ramsey* reviewed the long history upholding customs searches, and reaffirmed that warrantless border searches without probable cause are nonetheless constitutionally reasonable:

> Border searches, then, from before the adoption of the Fourth Amendment, have been considered to be "reasonable" by the single fact that the person or item in question had entered into our country from outside.

431 U.S. at 619, 97 S.Ct. at 1980. The Court applied the same principle to customs searches of incoming international mail, since no meaningful distinction could be drawn between entry of persons, suitcases and packages, and entry by mail. *Id.* at 620–621, 97 S.Ct. 1972. The Court thus confirmed the view that has been taken by this Court and the other courts which have considered the question.[2]

Mail sorting rooms at a port of entry like New York are border areas.[3] Thus, the instant search was reasonable simply because the package was searched at a border area after entering this country from Thailand.

---

1. *See, e. g., United States v. Emery,* 541 F.2d 887, 889 (1st Cir. 1976); *United States v. Barclift,* 514 F.2d 1073, 1074–1075 (9th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975); *United States v. Bolin,* 514 F.2d 554, 557 (7th Cir. 1975); *United States v. Carpenter,* 403 F.Supp. 361, 363 (D.Mass.1975); *United States v. Various Articles of Obscene Merchandise,* 395 F.Supp. 791, 792 (S.D.N.Y.1975), *aff'd without opinion,* 538 F.2d 317 (2d Cir. 1976).

 In our previous case dealing with a customs search of an incoming international letter, we did not address the issue of § 1582's applicability, because the customs agent there had "reasonable cause to suspect" that the letter contained contraband. *United States v. King,* 517 F.2d 350 (5th Cir. 1975). Similarly, in the recent case of *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977), the Supreme Court expressly pretermitted the question of whether § 1582 authorizes warrantless customs mail searches, since the Court found the search before it justified under § 482. *Id.* at 615 n.10, 97 S.Ct. 1972.

2. *United States v. King,* 517 F.2d 350, 352–353 (5th Cir. 1975) (the Government's "well recognized right to examine both persons and merchandise entering the country. . . . extends also to incoming first class mail"). *See United States v. Emery,* 541 F.2d 887, 889 (1st Cir. 1976); *United States v. Milroy,* 538 F.2d 1033, 1036–1037 (4th Cir. 1976); *United States v. Barclift,* 514 F.2d 1073, 1074–1075 (9th Cir.), *cert. denied,* 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975); *United States v. Odland,* 502 F.2d 148, 151 (7th Cir.), *cert. denied,* 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974); *United States v. Doe,* 472 F.2d 982, 984 (2d Cir.), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2160, 36 L.Ed.2d 691 (1973); *United States v. Beckley,* 335 F.2d 86, 89 (6th Cir. 1964), *cert. denied,* 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); *Hogan v. State of Nebraska,* 402 F.Supp. 812, 814 (D.Neb.1975), *aff'd,* 535 F.2d 458 (8th Cir. 1976); *United States v. Swede,* 326 F.Supp. 533, 536 (S.D.N.Y.1971); *United States v. Sohnen,* 298 F.Supp. 51, 54–55 (E.D.N.Y.1969). *See generally* Annot., 36 A.L.R.Fed. 864 (1978).

3. *United States v. King,* 517 F.2d 350, 353 (5th Cir. 1975); *United States v. Swede,* 326 F.Supp. 533, 536 (S.D.N.Y.1971); *United States v. Sohnen,* 298 F.Supp. 51, 55 (E.D.N.Y.1969).

This search was therefore valid under § 1582 and the Fourth, Amendment. The district court was correct in admitting the heroin found as a result of the mail search into evidence.

## II. *The Search of Elston's Automobile*

After Agent Nance's search revealed the package's contents, all but a trace amount of the heroin was removed and replaced with flour. A controlled delivery of the package was then made to 310 Bragg Smith Street, Earna Jean Pringle's house, while Government agents kept the premises under surveillance. The package was accepted by defendant Pringle.

Twenty minutes later, defendant Harold Elston arrived at 310 Bragg Smith Street and entered the house. The surveilling agents saw Elston peek from inside the house through the drawn blinds several times. When he left the house some 10 minutes after he had arrived, the agents noticed that his posture was more erect than before, and that there was a noticeable bulge under his jacket. When the agents had resealed the package prior to delivery, they had inserted in it a beeper type transmitter known as an "AT-4." The AT-4 emits a beeping signal which allows the agents to follow the location of the package. Since the signal from the AT-4 beeper became weaker as Elston drove away, the agents concluded that Elston had the package in his car. The agents stopped the car. As Elston got out, Postal Inspector Lalli saw the package in plain view between the seat and door on the driver's side. It had not been opened. The package was seized, and Elston arrested.

■ The search of Elston's car was valid, since the agents had probable cause to stop the car and seize the package. Elston left Pringle's house walking in a suspiciously erect manner, with a bulge under his jacket which the agents believed might be the package. As his car drove away, the AT-4 beeper signal from the package grew weaker. These facts gave the agents probable cause to stop the car. When the stop was made, Inspector Lalli saw the package in plain view. Accordingly, the stop of the car, arrest of Elston, and seizure of the package were proper.

■ While defendants have not raised this issue, we note that the insertion of the beeper into the package and its subsequent use in tracking the package were constitutionally permissible.

Our prior decisions examined the use of beepers in several different situations. In *United States v. Holmes*, 537 F.2d 227 (5th Cir. 1976) (*en banc*), an equally divided *en banc* decision of this Court affirmed the district court's holding that installation of a beeper on a suspect's car is an illegal search, absent probable cause.[4] In *United States v. Perez*, 526 F.2d 859 (5th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 129, 50 L.Ed.2d 118 (1976), a beeper was placed in a television set which undercover agents bartered in return for heroin. The Court distinguished the situation from that in *Holmes*, assuming without deciding that the defendant had no reasonable expectation of privacy in that situation:

> [A] person who accepts an item of personal property in exchange for heroin has no reasonable expectation that it is cleansed of any device designed to uncover the tainted transaction or identify the parties.

**4.** *Accord, United States v. Moore*, 562 F.2d 106, 112–113 (1st Cir. 1977); *United States v. Frazier*, 538 F.2d 1322, 1325 (8th Cir. 1976), *cert. denied*, 429 U.S. 1046, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977). The Ninth Circuit takes a contrary view. It holds that the use of beepers in such situations is not a search, since there is no reasonable expectation of privacy in the movements of a car on the highway because the movements are exposed to the public and the beeper just aids what agents could have accomplished by visual surveillance. *United*

*States v. Pretzinger*, 542 F.2d 517, 520 (9th Cir. 1976); *United States v. Hufford*, 539 F.2d 32, 33–34 (9th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976).

*Cf. United States v. Cheshire*, 569 F.2d 887, 889 (5th Cir. 1978) (beeper placed on plane justified by owner's consent); *United States v. Abel*, 548 F.2d 591, 592 (5th Cir.), *cert. denied*, 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977) (same); *United States v. Tussell*, 441 F.Supp. 1092, 1102–1106 (W.D.Pa.1977) (same; pilot's consent).

526 F.2d at 863. Similarly, in *United States v. Bishop*, 530 F.2d 1156 (5th Cir.), *cert. denied*, 429 U.S. 848, 97 S.Ct. 133, 50 L.Ed.2d 120 (1976), police used a beeper placed in a package of "bait money" to track the bank robbers. The Court upheld the arrest under Louisiana's "close pursuit statute." Although not discussed by the Court, the decision implicitly approved the use of the beeper in that situation. *See United States v. Moore*, 562 F.2d 106, 111 (1st Cir. 1977) (citing *Perez* and *Bishop* as cases that upheld the warrantless placing of beepers in contraband and stolen property).

The instant case is similar to *Perez* and *Bishop*. The beeper was placed in a package containing contraband. As the First Circuit explained in *Moore, supra*, "possessors of [contraband] have no legitimate expectation of privacy in substances which they have no right to possess at all." 562 F.2d at 111. Accordingly, under *Perez* and *Bishop* the insertion of the beeper into the package was constitutionally permissible.

The First Circuit has reached the identical conclusion in a case that closely resembles the case *sub judice*. In *United States v. Emery*, 541 F.2d 887 (1st Cir. 1976), customs inspectors opened two packages mailed into the country from Colombia. The agents discovered cocaine inside the packages, removed all but a trace amount, and inserted a beeper into the package prior to delivery. The court upheld the warrantless customs mail search, citing *Odland, supra*. 541 F.2d at 889. The court also upheld the use of the beeper, distinguishing *Holmes* on the ground that the package contained contraband, which defendant had no right to possess. Accordingly, the First Circuit held that defendant had no reasonable expectation of privacy as to the contraband:

We simply hold that in inserting the beeper into the contraband, which had been legitimately discovered and constructively seized at the border, the government did not violate appellant's constitutionally protected freedom from unreasonable searches and seizures.

*Id.* at 890.[5] We agree with the First Circuit's rationale. The use of the beeper was, therefore, proper.

### III. *Sufficiency of the Evidence*

The jury's verdict must be sustained if there is substantial evidence to support it, taking the view most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

The evidence presented at trial was sufficient to sustain the jury's verdict. The package was sent to Pringle's address, 310 Bragg Smith Street. Pringle accepted delivery of it, signing the receipt as "Elaine Grant." Elston arrived soon after the package was delivered, acting in a surreptitious manner while inside and as he departed Pringle's house. Both defendants testified in their own behalf, and "explained" their behavior to the jury. Elston testified that Pringle had telephoned him and asked him to come to her house. When he did, he saw the package, and told her he would dispose of it because it looked suspicious. Pringle testified that she called Elston and asked him to take the package to her sister Pat, who was going to visit their sister Elaine Grant in South Carolina. Pringle said she thought the package was a Christmas present for Ms. Grant. Elaine Grant testified, however, that Pringle had not previously received mail for her, she was not expecting a package from Thailand, and she was not expecting a visit from her sister Pat.

---

5. *Accord, United States v. Carpenter*, 403 F.Supp. 361, 363–365 (D.Mass.1975) (district court opinion in a companion case to *Emery* involving a co-defendant, reached the identical result as did the First Circuit in *Emery*). *See also United States v. French*, 414 F.Supp. 800 (W.D.Okl.1976), where DEA agents seized a plane-load of marijuana, placed a beeper in the marijuana, and allowed the plane to continue to its final destination. The court held that the use of the beeper was not a search:

> Having lawfully seized the contraband the agents could lawfully implant the "beeper." Logically since the officers could absolutely seize the contraband the lesser act of inserting the tracking devices must necessarily be permissible.

414 F.Supp. at 803.

The jury resolved the question of credibility against defendants. The evidence was sufficient to allow the jury to find defendants guilty beyond a reasonable doubt.

## IV. *The Jury Instructions*

 Defendants object to the trial court's instructions to the jury.

They first object to the court's instruction on overt acts. In instructing the jury that overt acts need not themselves be criminal, the judge explained that the act "could be something as innocent as saying good morning or making a telephone call or driving a car or tipping your hat." Two of these illustrations parallel subject matter of the Government's evidence against defendants, *i. e.*, "making a telephone call" (Pringle called Elston) and "driving a car" (Elston drove to and from Pringle's house).

The charge given correctly states the law regarding overt acts. *See, e. g., Reese v. United States*, 353 F.2d 732, 734 (5th Cir. 1965). It is substantially that suggested by the standard reference on federal jury instructions, Devitt & Blackmar, *Federal Jury Practice & Instructions* § 27.07 (3d ed. 1977). When viewed as part of the entire charge to the jury, the coincidence in the examples could not have prejudiced the defendants. In addition, despite some prior confusion on this issue, our recent cases are clear that a showing of overt acts is not

necessary in prosecutions for conspiracy under 21 U.S.C.A. § 846. *See, e. g., United States v. Thomas*, 567 F.2d 638, 641 (5th Cir. 1975); *United States v. Palacios*, 556 F.2d 1359, 1364 n. 9 (5th Cir. 1977), and cases cited therein. Thus, the trial court's instruction on overt acts "placed a greater burden on the government than it was required to shoulder and thus inured to the advantage of the defendants rather than their prejudice." *United States v. Thomas, supra*, 567 F.2d at 641.

 Second, defendants complain that the judge improperly expressed an opinion in his instruction that an exculpatory statement by a defendant, later shown to be false, may show a consciousness of guilt. This instruction is also suggested by Devitt & Blackmar, *supra*, § 15.12. The judge specifically prefaced this portion of the charge by telling the jury that he was *not* commenting on the evidence.[6] The charge was proper.

AFFIRMED.

---

**6.** "Now, during the course of the trial of this matter you heard witnesses testify about statements made by the defendant Pringle and statements made by the defendant Elston after they had been confronted with some suggestion that they might have been guilty of the commission of a crime and *I am expressing no opinion now about the evidence in the case, about what the facts are, but once in awhile I have to refer to some of the evidence which has been heard so that you understand the principle of law that I am referring to.* I charge you that the conduct of a defendant, including statements made and acts done upon being informed that a crime has been committed, or upon being confronted with a criminal charge, may be considered by the Jury in the light of other evidence in the case in determining the guilt or innocence of the accused. When a defendant voluntarily offers an explanation or makes some statement tending to establish his innocence or her innocence, and such explanation or statement is later

shown to be false in whole or in part, the Jury may consider whether this circumstantial evidence points to a consciousness of guilt. It is reasonable to infer that an innocent person does not ordinarily find it necessary to invent or fabricate a voluntary explanation or statement tending to establish his innocence. Whether or not evidence as to a defendant's voluntary explanation or statement points to a consciousness of guilt and the significance, if any, to be attached to any such evidence, are matters for determination by the Jury. *I'm not suggesting to you that either of the defendants made any contradictory statements. I'm not suggesting that at all. I express no opinion about it,* but I give you that principle of law in charge because, if you conclude that such contradictory statements were made either in whole or in part, then that is the principle of law for your consideration *but, as I say, I express no opinion about the matter whatsoever.*" (emphasis added).