UNITED STATES of America,
Plaintiff-Appellant,

v.

Barry Dean MICHAEL, a/k/a Mike
Thompson, a/k/a Mike Johnson,
Defendant-Appellee.

No. 79–2679.

United States Court of Appeals,
Fifth Circuit.

July 28, 1980.

William S. Sutton, Asst. U.S. Atty.,
Atlanta, Ga., Ann T. Wallace, Atty., App.
Sec., Criminal Div., Washington, D. C., for
plaintiff-appellant.

Al M. Horn, Atlanta, Ga., for defendant-
appellee.

Before KRAVITCH, HATCHETT and
TATE, Circuit Judges.

TATE, Circuit Judge:

This panel faces an issue on which the en
banc court divided equally: Whether, ab-
sent exigent circumstances, governmental
agents may install an electronic tracking
device (a "beeper") upon a private automo-
bile without first securing judicial autho-
rization. A panel of this court unanimously
held in the negative. *U. S. v. Holmes*, 521
F.2d 859 (5th Cir. 1976). An application for
en banc hearing was granted, 525 F.2d 1364
(5th Cir. 1976). On such rehearing, due
only to the even division of the sixteen
judges participating, the district court's
judgment requiring a warrant was af-
firmed. 537 F.2d 227 (5th Cir. 1976).[1]

In the case before us, the defendant Mi-
chael was indicted on two counts (along
with three co-defendants) for conspiracy to
unlawfully manufacture methylenedioxy-
yamphetamine (MDA), a Schedule II Con-
trolled Substance, and for the unlawful dis-
tribution of MDA, in violation of 21 U.S.C.,
Sections 841(a)(1) and 846. The defendant
Michael moved to suppress certain evidence
as unconstitutionally seized. With regard
to the issue before us, the evidence was
seized from a warehouse (the search of
which *was* authorized by a warrant), the
location of which had been ascertained as a
result of the warrantless installation of a
beeper on a van rented and operated by
Michael. The warehouse was located four
days after installation of the beeper
through following Michael's van with its
aid. Relying on *Holmes*, the district court

---

1. Since this panel independently adheres to the
views expressed by the original panel decision
in *Holmes*, we do not reach the issue of wheth-
er the vacation of the panel decision by the
grant of en banc hearing vitiates its preceden-
tial effect. *But see United States v. Conroy*,
589 F.2d 1258, 1263 (5th Cir. 1979).

suppressed the evidence as the fruit of the warrantless installation of the beeper; it held that the Fourth Amendment was violated by the failure of the governmental agents to obtain judicial authorization (a search warrant) prior to installation of the beeper and to the subsequent monitoring of the vehicle through its use. The government appeals. 18 U.S.C., Section 3731.[2] For reasons to be stated, we affirm.

## I.

The central issue of this appeal is thus whether, absent exigent circumstances, a warrant issued with judicial approval is required before governmental agents may attach to a privately owned vehicle, without consent of one entitled to give it, a "beeper" or electronic tracking device. The panel agrees that, should judicial authorization be required, then the trial court's conclusion is not clearly erroneous that no exigent circumstances justified the immediate installation of the beeper without prior judicial approval.[3] The panel is of the further opinion that only reasonable suspicion[4] existed—at the time the beeper was installed—to believe that the defendant was connected with the criminal activity of another suspect (for whom probable cause did exist); but that, whether the test is probable cause or instead reasonable suspicion, a warrant issued under judicial supervision is required (absent exigent circumstances) before a

---

**2.** The defendant cross-appealed from the denial of his motion to suppress certain *other* evidence seized in a search *independent of* the beeper issue. At oral argument, the defendant's counsel conceded that the denial of the motion was not an appealable final decision and that the cross-appeal should be be dismissed on jurisdictional grounds, as the government argued.

**3.** The government argues that exigent circumstances existed: Until "Mike Thompson" appeared at the warehouse for this purchase of chemicals, the agents had no leads as to his identity or as to what type vehicle he would be driving; and, despite the number of agents involved (six), it was impracticable to secure a warrant during the three hours or so of visual surveillance of the vehicle.

The defendant points out: The intention from August 8 until August 10 (see facts in footnote 4) had been to install a beeper on "Thompson"'s vehicle if an opportunity arose after the vehicle appeared at the chemical company—and, on "Thompson"'s slight connection until then with Welch (see footnote 4), a magistrate may well have refused this intrusion on Thompson's privacy until more connection by him with illegal conduct had been established. Even after the defendant appeared at the chemical company, there was full opportunity to establish "Thompson"'s identity and address by other than electronic surveillance. At that time, the identity and license number of the vehicle became known; through this information, prior to the installation of the beeper, the agents knew the van was a rental vehicle registered to the Wade Ford Company. Wade's records reflected that the rental was to the defendant at his correct address (although, admittedly, this information was not known to the agents at the time of the beeper's installation).

**4.** The panel believes that the evidence shows that, at the time the beeper was installed, there could under the evidence be only reasonable suspicion that Michael was a member of the conspiracy to manufacture MDA (the illegal drug). Under the evidentiary showing, a "Mike Thompson" had in December, 1977 returned to a chemical warehouse a drum previously obtained by co-defendant Welch (for whom at the time probable cause did exist to believe he was engaged in the criminal activity). "Mike Thompson" also then left instructions for the warehouse to return Welch's $25.00 deposit to Welch. "Mike Thompson" had previously purchased chemicals from the supplier, not shown to be of suspicious character or amount. On August 8, 1978, "Thompson" purchased acetone, a substance used in the manufacture of MDA (although it also has many innocent uses), and he was to return to pick up his additional order of 20 gallons of acetone two days later. (At that time, i. e., August 10, the waiting governmental agents followed "Thompson" and, about three hours later, attached the beeper to his van at a public parking lot. No suspicious activity was observed during this three-hour interval.) A reasonable suspicion could arise that the purchase by Michael ("Thompson") of acetone (which has innocent uses as well) on August 8 and 10, 1978 may have been connected with Welch's probable-cause-established manufacture of MDA; but Michael's sole previous connection with Welch's operation was his return of Welch's drum to the warehouse in December, 1977, and his request that the $25.00 deposit be returned to Welch.

Subsequent to installation of the beeper, following leads thereby developed, the agents were able to establish probable cause to believe that "Mike Thompson" was the defendant Michael and that he was connected with other aspects of the conspiracy's operation.

beeper may be installed without consent on private property for purposes of electronic surveillance—albeit that such private property is a motor vehicle parked at the time in a place open to the public, and that the beeper is attached only to its exterior.

Preliminarily, we note the factual circumstances attendant upon the use of a beeper for the purpose of maintaining electronic surveillance of the travel and location of the vehicle to which attached. The beeper is a battery-operated device that emits signals that can be picked up on a radio frequency. The signals show the approximate location and movement of the vehicle to which it is affixed. The beeper is quickly attached through its magnets to the underside exterior of the vehicle. Although a governmental witness testified that the battery usually lasts only ten days, the evidence in this case shows that the beeper installed on August 10th was still emitting signals at the end of August (when it was removed from the rental vehicle after its return to the automobile agency).

## II.

In the instant case, the evidence was suppressed by the district court as the fruit of the warrantless installation of a beeper. The narrow issue concerns the initial unauthorized installation of the beeper upon a vehicle, when no exigent circumstances justified doing so if prior judicial authorization is required.

In *Holmes*, the panel decision held that the warrantless attachment of a beeper to private property, under such circumstances, is a per se intrusion on Fourth Amendment rights. Distinguishing the attachment

from such minimal and momentary intrusions as checking vehicle identification numbers or taking paint scrapings, the panel decision held that the beeper, remaining constantly in place, performs a search of much more substantial and therefore unreasonable duration and scope.[5] The panel decision essentially held that the installation of the beeper without consent upon private property is a "search" subject to Fourth Amendment warrant requirements, in the sense that it is an unreasonable governmental intrusion upon the individual's constitutionally guaranteed right of personal security, personal liberty, and private property. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886).

The dissenting opinion to the en banc *Holmes* affirmance, 537 F.2d at 228, believed that no warrant is required. The dissent did not view the installation of the beeper as a "search" or invasion of privacy within the protection of the Fourth Amendment. It essentially viewed the attachment as a minimal intrusion upon the individual's privacy and property equivalent to the permissible warrantless inspection of a vehicle identification number on the frame of an automobile, *United States v. Johnson*, 431 F.2d 441 (5th Cir. 1970) (en banc), or to the taking of paint scrapings from the exterior of an automobile parked in a police impoundment lot, *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974).

## III.

In decisions subsequent to *Holmes*, the Fifth Circuit held that the express consent

---

5. The panel decision indicated that not only the initial placement of the beeper but also its attachment during the entire period of its use implicates Fourth Amendment interests of the privacy rights of persons with standing to complain. This portion of the holding arguably has been eroded by subsequent decisions that one whose movements are monitored by use of a beeper cannot complain of a Fourth Amendment violation based on extended electronic surveillance alone, if the initial placement is made with the consent of a person with possessory interest in the property to which the beep-

er is attached, *United States v. Cheshire*, 569 F.2d 887 (5th Cir. 1978), *United States v. Abel*, 548 F.2d 591 (5th Cir. 1977), or if the beeper is placed during a lawful customs search in a package containing contraband, *United States v. Pringle*, 576 F.2d 1114 (5th Cir. 1978). *See also: United States v. Perez*, 526 F.2d 859 (5th Cir. 1976) (beeper placed in television set which had been exchanged for drugs by governmental agents); *United States v. Bishop*, 530 F.2d 1156 (5th Cir. 1976) (beeper placed in "bait money" stolen from bank).

of the owner to the installation of electronic tracking devices in aircraft was within the third-party consent exception to the warrant requirement. *United States v. Cheshire*, 569 F.2d 887 (5th Cir. 1978) (beeper placed on plane justified by owner's consent); *United States v. Abel*, 548 F.2d 591 (5th Cir. 1977),[6] *cert. denied*, 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977) (beeper placed on plane justified by owner's consent). *Accord United States v. Miroyan*, 577 F.2d 489 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978). Likewise in *United States v. Conroy*, 589 F.2d 1258 (5th Cir. 1979), this court held that it was not an invalid warrantless search when a paid informant installed an electronic beeper on a vessel used by defendants in their attempt to import marijuana into the United States: "Here, Budal [the informant] was not the vessel owner, but he had a right to go aboard, and his placement of the devices on the vessel rather than on his person does not render its introduction invalid." 589 F.2d at 1264.

The approaches of the other circuits, when they have reached the issue, vary whether the installation of a beeper to ascertain continuously the location of an object or of a vehicle (or airplane) falls within Fourth Amendment prohibitions, and also whether a warrant is required.

The *First Circuit* has held that the installation of electronic devices to monitor the movement of a vehicle violates reasonable, although lessened, expectations of privacy of the operator of the vehicle, but that no warrant was required and no Fourth Amendment violation occurred where government agents have probable cause to believe that the operator of the vehicle is involved in the commission of a crime. *United States v. Moore*, 562 F.2d 106, 112–113 (1st Cir. 1977).[7] Of some relevance to a

concern expressed by the present panel, the court further held that the warrantless insertion in a container of a legally possessed non-contraband substance (although with the consent of the chemical company prior to delivery to the suspect) may have violated the accused's Fourth Amendment rights, insofar as it continuously emitted information as to location of the chemicals *while inside a residence protected from warrantless search*. Due to record deficiency, the court therefore remanded the case for the district court to determine whether the location of the evidence "was come at not by exploitation of the illegality [the warrantless continued presence of the beeper in the home] but instead by distinct means which purge the evidence of the primary taint." *Id*. at 114.

In one opinion, the *Ninth Circuit* has held, although arguably by way of dicta,[8] that the attachment of an electronic location device to an automobile does not infringe upon any reasonable expectation of privacy and therefore does not constitute a search. *United States v. Hufford*, 539 F.2d 32 (9th Cir.), *cert. denied*, 429 U.S. 1002, 97 S.Ct. 533, 50 L.Ed.2d 614 (1976). Subsequent decisions of that circuit, however, indicate that, a warrantless installation of a beeper without consent might raise Fourth Amendment issues, but that the mere monitoring of movement *after* installation of a beeper (i. e., with consent of one entitled to give *or* pursuant to judicial authorization) does not infringe on any reasonable expectation of privacy and therefore does not constitute a search. *United States v. Miroyan*, 577 F.2d 489, 492 (9th Cir.), *cert. denied*, 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978); *United States v. Pretzinger*, 542 F.2d 517 (9th Cir. 1976).

The *Eighth Circuit* has held that monitoring the airborne *location* of an aircraft with

---

6. In *Abel* the government stipulated that the installation of a beeper was a search, but the court held the search reasonable based on consent.

7. However, the First Circuit found the lessened expectancy of privacy applicable to vehicles to have no relevancy to packages which do not

contain contraband. In that situation, a warrant is required. 562 F.2d at 113.

8. The statement was arguably dicta. The warrantless insertion of the beeper into one of the drums of caffeine purchased from a manufacturer, while in the manufacturer's possession, was with his consent.

a beeper installed through consent is not a search for purposes of Fourth Amendment. *United States v. Bruneau*, 594 F.2d 1190 (8th Cir.), *cert. denied*, 444 U.S. 847, 100 S.Ct. 94, 62 L.Ed.2d 61 (1979). It has also held that such installation without a warrant was justified by exigent circumstances and probable cause, avoiding a ruling upon whether the installation of a beeper is indeed a search or seizure within the protection of Fourth Amendment. *United States v. Frazier*, 538 F.2d 1322 (8th Cir. 1976), *cert. denied*, 429 U.S. 1046, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977).

The *Seventh* and *Tenth Circuits* did not reach a decision of the narrow issue before us, when potentially faced with the issue, either because judicial authorization based on probable cause had been obtained to install a beeper, *United States v. Washington*, 586 F.2d 1147 (7th Cir. 1978), or because the court found probable cause plus exigent circumstances justified the installation of the beeper, *United States v. Shovea*, 580 F.2d 1382 (10th Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1216, 59 L.Ed.2d 456 (1979), or because the beeper (lawfully implanted in a container before its delivery to the defendant) represented only a slight intrusion of privacy when emitting signals from its location within a clandestine laboratory, *United States v. Clayborne*, 584 F.2d 346, 351 (10th Cir. 1978).[9]

The commentary in the legal writings has in general approved the *Holmes* holding that the warrantless installation of a beeper without consent and absent exigent circumstances represents a violation of an individ-

ual's Fourth Amendment property and privacy rights. Note, *Tracking Katz: Beepers, Privacy, and the Fourth Amendment*, 86 Yale L.J. 1461 (1977); Comment, *Fourth Amendment Implications of Electronic Tracking Devices*, 46 Cinn.L.Rev. 143 (1977); Note, *Search and Seizure—Does Installation of an Electronic Tracking Device Constitute a Search Subject to the Fourth Amendment?*, 22 Vill.L.Rev. 1067 (1977); Comment, *Tracking Devices and the Fourth Amendment*, 13 U.S.F.L.Rev. 203 (1978); Note, *Police Use of Sense-Enhancing Devices and the Limits of the Fourth Amendment*, 1977 U.Ill.L.F. 1167; Note, *Search and Seizure—Attachment of a Tracking Device to Automobile Constitutes a Search Subject to Fourth Amendment*, 29 Vand.L. Rev. 514 (1976). *Contra*: Marks & Batey, *Electronic Tracking Devices: Fourth Amendment Problems and Solutions*, 67 Ky. L.Rev. 987 (1979); Note, *Electronic Tracking Devices & Privacy: See No Evil, Hear No Evil, But Beware of Trojan Horses*, 9 Loy.Chi.L.J. 227 (1977). *See also* commentary that expressed no value judgment: Dowling, *"Bumper Beepers" and the Fourth Amendment*, 13 Crim.L.B. 266 (1977); Carr., *Electronic Beepers*, 4 Search and Seizure Law Report No. 4 (1977).

## IV.

The conventional analysis of constitutional issues relating to beeper installation and use is based on Fourth Amendment considerations.[10] The Fourth Amendment provides:

---

**9.** Later, the Tenth Circuit stated, "[f]or the purpose of our present discussion, we shall assume, without deciding, that the installation of the beepers and their use in the present case constituted a 'search' within the meaning of the Fourth Amendment." *United States v. Chavez*, 603 F.2d 143, 145 (10th Cir. 1979.) The court upheld, as satisfying Fourth Amendment requirements of probable cause, the judicial authorization of the installation and the judicial extension of the order permitting electronic surveillance.

**10.** The author notes (but does not here rely upon) his view that broader Ninth Amendment grounds may protect the individual liberty of citizens from unauthorized intrusion of govern-

mental agents on their right to be left alone by government, whether or not a technical Fourth Amendment-prohibited search and seizure occurs. The Ninth Amendment provides: "The enumeration of certain rights shall not be construed to deny or disparage others retained by the people." The specific constitutional intent of this amendment was that the specific mention of certain rights in the first eight amendments would not be interpreted as a denial that others were protected. *Griswold v. Connecticut*, 381 U.S. 479, 488–90, 85 S.Ct. 1678, 1684–85, 14 L.Ed.2d 510 (1965) (concurring opinion); Franklin, *The Ninth Amendment as Civil Law Method and Its Implications for Republican Form of Government: Griswold v. Connecticut; Katzenbach v. South Carolina*, 40 Tul.L.Rev.

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The analysis of most of the beeper decisions has usually concerned itself with whether the individual's Fourth Amendment reasonable expectation of privacy, as enunciated by *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), has been violated. *Katz* concerned electronic eavesdropping, to accomplish which no physical trespass had occurred. In overruling former decisions in which the test of Fourth Amendment violation depended *solely* upon whether a trespass had occurred, the *Katz* court enunciated a broader constitutionally protected right of a reasonable expectation of privacy than was (under the pre-*Katz* jurisprudence) determinable merely by property rights, *i. e.*, whether a trespass had occurred. *Katz* did not necessarily modify the earlier jurisprudence, however, insofar as it protected an individual against a search of his private property through the illegal entry thereupon, however minute, by governmental agents for the purpose of securing information.

Under pre-*Katz* jurisprudence, a "search" included any physical intrusion of a surveillance device into premises, by even a fraction of an inch. *Silverman v. United States*, 365 U.S. 505, 512, 81 S.Ct. 679, 683, 5 L.Ed.2d 734 (1961). An automobile, so long as it was not abandoned, was regarded as among the constitutionally-protected "effects" of a person, whether or not it was in a person's possession or upon his premises. *Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). (Although somewhat modified by subsequent holdings permitting examination after lawful police seizure or impoundment, *see, e. g., Cardwell*

*v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), the core holding of *Preston* remains unchanged that the warrantless search of an automobile, in the absence of exigent circumstances, violates the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).)

Thus, under pre-*Katz* jurisprudence the attachment (without consent of one with possessory interest) of the beeper for purposes of securing information upon the automobile lawfully possessed by Michael, even if he was not present, was a "search" of his automobile. Having been accomplished through an illegal trespass, its fruits were inadmissible as obtained in violation of the Fourth Amendment. The pre-*Katz* jurisprudence had thus drawn a line at the limits of the individual's property right, in effect holding that thus far and no further could the government go without a warrant in its investigative intrusion into his affairs.

## V.

In *Katz*, as noted, the Supreme Court overruled decisions that held that the individual's right against unreasonable searches and seizures through electronic eavesdropping ended in effect at his property line. The Court noted that "the Fourth Amendment protects people, not places," 389 U.S. at 351, 88 S.Ct. at 511, and it held that the Amendment protects against any warrantless intrusion into an activity in which the person involved has a reasonable expectation of privacy, 389 U.S. at 353, 88 S.Ct. at 512. Justice Harlan's concurring opinion provided an analysis that subsequent jurisprudence has generally followed. The new privacy standard for testing Fourth Amendment violations contains, he said, a twofold requirement: "[F]irst that a person have exhibited an actual (subjective) expectation of privacy, and second, that the ex-

487 (1966). *Griswold* discerned the individual's Ninth Amendment more general right to individual privacy (by reason of which the court invalidated a state statute prohibiting dissemi-

nation of birth-control information) from the penumbras emanating from various specific more limited guarantees enunciated by the first eight amendments.

pectation be one that society is prepared to recognize as 'reasonable'. . . ." 389 U.S. at 361, 88 S.Ct. at 516.

We do not read *Katz*, however, as ending Fourth Amendment protection to individuals against warrantless intrusion of the government through illegal trespass on their property, should no reasonable expectation of privacy be invaded. The Court itself noted that the Fourth Amendment "protects individual privacy against certain kinds of governmental intrusion, but its protections go further, and often have nothing to do with privacy at all." 389 U.S. at 350, 88 S.Ct. at 510. In holding, over Mr. Justice Black's vigorous dissent on that ground, 389 U.S. at 384, 88 S.Ct. at 518, that "the 'trespass' doctrine there enunciated [referring to former decisions] can no longer be regarded as *controlling*," 389 U.S. at 353, 88 S.Ct. at 512 (emphasis supplied), there is no indication that the Court intended to overrule its prior holdings that the Fourth Amendment protected individuals against the use of information obtained through a trespass upon their property. Rather, the intent and effect of *Katz* was to *broaden* rather than to limit Fourth Amendment rights.[11] And, indeed, in *Alderman v. United States*, 394 U.S. 165, 176–80, 89 S.Ct. 961, 969–70, 22 L.Ed.2d 176 (1969), the Court specifically rejected the contention that the new or additional privacy rights recognized by *Katz* had somehow discarded the prior interpretations recognizing that, under the terms of the Fourth Amendment, an individual was protected against the use against him of evidence obtained through an unauthorized entry upon his property, whether or not he himself had any reasonable expectation of privacy with regard to the evidence concerned.

We are reinforced in this view by *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61

L.Ed.2d 220 (1979). There, the Court upheld the non-suppression of evidence obtained by use of a pen register, which had been installed at the telephone company's central office. This device recorded the numbers dialed from the telephone at the home of the criminally accused. Using the *Katz* reasonable expectation of privacy test, as enunciated in Mr. Justice Harlan's concurring opinion, the Court held that telephone users had no actual or subjective expectation of privacy in the numbers they dialed, and that any subjective expectation of the accused himself is not one that society is prepared to recognize as reasonable. 442 U.S. at 741–42, 99 S.Ct. at 2581–82.

Nevertheless, the holding must be viewed in its context that no physical trespass was involved. The Court itself noted: "The activity here took the form of installing and using a pen register. Since the pen register was installed on telephone company property at the telephone company's central offices, petitioner obviously cannot claim that his 'property' was invaded or that police intruded into a 'constitutionally protected area.'", 442 U.S. at 741, 99 S.Ct. at 2581. This limitation upon the holding of *Smith v. Maryland* would be unnecessary if the government's view is correct that a trespass is immaterial, *i. e.*, that the test is *solely* whether the individual had a reasonable expectation of privacy in the information sought to be obtained by government agents through electronic or other sophisticated recording of non-communicative activity by a suspect.

Perhaps the strongest argument for the government's case can be based upon *Cardwell v. Lewis*, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974). There, paint scrapings and the impression of a tire tread from the exterior of a suspect's car were obtained without a warrant. The Court, recognizing

---

**11.** As noted by Professor Amsterdam in *Perspectives on The Fourth Amendment*, 58 Minn. L.Rev. 349, 385 (1974):

As a doctrinal matter, it seems clear that the effect of *Katz* is to expand rather than generally to reconstruct the boundaries of fourth amendment protection. *Katz* is important for its rejection of several limitations

upon the operation of the amendment, but it offers neither a comprehensive test of fourth amendment coverage nor any positive principles by which questions of coverage can be resolved. The fourth amendment is not limited to protection against physical trespass, although the pre-constitutional history of the amendment was concerned with trespasses.

that a technical trespass may have occurred, applied the reasonable-expectation-of-privacy analysis, noting the lesser expectation of privacy as to the exterior of a car originally left in a public parking place. The Court held that the warrantless examination of the exterior of the vehicle was not unreasonable under the Fourth Amendment. However, it must be noted that the car had been impounded by the police after the accused's arrest, and it had then been removed to the police impoundment lot. Before upholding the subsequent warrantless search of the exterior upon probable cause as non-violative of the Fourth Amendment, the Court was obliged to find, that, initially, the vehicle itself had been constitutionally seized (upon probable cause and exigent circumstances) and impounded by the police. 417 U.S. at 592–97, 94 S.Ct. at 2470–72. *Cardwell* was a plurality decision, with four dissenters, and one Justice apparently concurring in the result only because the accused had had a full and fair opportunity to litigate his claim in the state courts and should not be afforded federal collateral review, 417 U.S. at 596, 94 S.Ct. at 2472 (Powell, J., concurring).

We do not believe that *Cardwell* is authority for the further proposition that the police may accomplish the acts of a warrantless exterior examination through technical trespass, not only upon vehicles lawfully impounded by them, but also upon any vehicles found in the public street. Likewise, the momentary invasion of the exterior of the vehicle, similar to the acts of a passerby, are minimal by way of search, as compared to the lengthy physical intrusion of a beeper that in effect appropriates private property for the unintended use of providing guidance to the government of every movement of the individual in the vehicle. The installation of the beeper involves a far broader, more extensive invasion of the individual's privacy than that with which *Cardwell* was concerned, and the Copernican difference in degree and duration of the effects of the trespass alone might distinguish *Cardwell's* holding as inapplicable to the present facts.

In rejecting the government's argument that *Cardwell* and *Smith* should be extended even further—so as to hold justifiable, because of the public interest in suppressing crime, the minute monitoring of an individual's movements over four (or one or twenty) days made possible by an illegal trespass upon his property, we should bear in mind Mr. Justice Bradley's admonition in his opinion for the Court almost a century ago in *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886), that is worth repeating here:

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.

## VI.

We thus reject the government's persuasively argued contention that the test here for Fourth Amendment interests begins and ends with an inquiry as to whether the individual had any reasonable expectation of privacy in his movements through use of the vehicle *following* installation of the beeper. As noted, we cannot ignore as irrelevant the important value of individual ownership of private property free of unauthorized intrusion thereupon by governmental agents that is recognized by various amendments in our Bill of Rights, pertinently here the Fourth, despite the lesser expectation of privacy as to the exterior of a vehicle. Nor can we regard the intrusion by trespass, with consequences extending over days of continued attachment of the beeper, as other than generically different

in degree and kind than the barely-sustained, virtually momentary trespass in *Cardwell*.

We also recognize the prevalent jurisprudence which affords no constitutional protection against following a vehicle by visual surveillance (or even by electronic surveillance, when the beeper is installed with consent, *see, e. g.*, footnote 5 *supra*), a function that the warrantless installation of a beeper for the most part furthers. Nevertheless, insofar as an individual's (and society's) reasonable expectation of privacy is a relevant factor, we agree with the original *Holmes* panel decision that the warrantless and unauthorized installation of a beeper intensifies the degree of surveillance—following the vehicle indefinitely and even indiscriminately into closed precincts (*e. g.*, a garage, a fenced estate) not visually observable which may have Fourth Amendment protection against governmental intrusion—to such an extent that it constitutes a violation of Fourth Amendment rights of privacy.

As the *Holmes* panel opinion, authored by Circuit Judge Bryan Simpson, states:

In contending that a citizen cannot expect his movements on public roads to remain private, the government assumes that the nature of the information it seeks to uncover controls whether or not a search has occurred. Thus, it tries to distinguish the beeper in the instant case from the phone tap at issue in *Katz* because the latter picks up conversation, an area in which, according to the government, a citizen has an extraordinary expectation of privacy.

The protections of the Fourth Amendment, however, do not depend entirely upon the nature of what is seized.

.    .    .    .    .

The real question, then, in cases of this type and the proper focal point for inquiry is whether the government, in searching out information not otherwise available, invades an individual's "right of personal security, personal liberty, and private property," *Boyd v. United States*, 1886, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746, 751, and violates "the privacy upon which he justifiably relied." *Katz*, supra, 389 U.S. at 353, 88 S.Ct. at 512, 19 L.Ed.2d at 583. By this approach, courts are able to distinguish visual surveillance from electronic surveillance, eavesdropping from wiretapping, a plain view from a breaking and entering.

No rational basis occurs to us for distinguishing the violation of the expectation of privacy involved in the installation of a "beeper" on a car, in order to trace its movement, from the placing of a tap on the outside of a telephone booth in order to overhear and record conversations, *Katz*, supra. In addition, of course, the "beeper" installation was accomplished by an actual trespass.

.    .    .    .    .

A person has a right to expect that when he drives his car into the street, the police will not attach an electronic surveillance device to his car in order to track him. Although he can anticipate visual surveillance, he can reasonably expect to be "alone" in his car when he enters it and drives away.

521 F.2d 865–66 (footnotes omitted).

The placement by trespass of the beeper makes possible the continuous and indefinite tracing of the individual's movements, wherever he goes. It permits surveillance far beyond any ordinary powers of observation about which citizens may reasonably know, as the government inferentially admits when it contends that placement of the beeper was necessary in order to effectuate continuous surveillance.

We believe that the trespass so invades individual and societal reasonable expectation of privacy that the installation of a beeper on private property, absent both probable cause and exigent circumstances, requires judicial authorization, which may pass upon the purpose and cause for this intrusion upon an individual's property and privacy, and which may supervise its duration. The Fourth Amendment requires no less.

*Conclusion*

Accordingly, we AFFIRM the order of the district court, which granted the defendant's motion to suppress certain evidence as unconstitutionally seized.