UNITED STATES of America,
Plaintiff-Appellee,

v.

Pansy Stone CHAVEZ and Thomas Tilford Stone, Defendants-Appellants.

Nos. 78–1128, 78–1129.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted Jan. 26, 1979.

Decided Aug. 2, 1979.

David N. Williams, Asst. U. S. Atty., Albuquerque, N.M. (Victor R. Ortega, U. S. Atty., Albuquerque, N.M., on the brief), for plaintiff-appellee.

Clarence D. Moyers, El Paso, Tex. (Gerald M. Birnberg, Houston, Tex., on the brief), for defendants-appellants.

Before McWILLIAMS, BREITENSTEIN and McKAY, Circuit Judges.

McWILLIAMS, Circuit Judge.

Thomas Tilford Stone and his sister, Pansy Stone Chavez, along with two others, were charged with a number of violations of the Federal Controlled Substances Act. In a trial to the court Stone was convicted of conspiring to import marijuana, importing marijuana and possession of marijuana with an intent to distribute. 21 U.S.C. §§ 841(a)(1); 952(a); 960(a)(1); 963. His sister, Pansy Stone Chavez, in the same trial was convicted of conspiring to import marijuana and possessing marijuana with an intent to distribute. 21 U.S.C. §§ 841(a)(1); 963. The charges against the remaining two defendants were disposed of without trial. Stone and his sister appeal their respective convictions.

The main issue on appeal concerns the use of an electronic tracking device, sometimes referred to as a transmitter or a transponder, and more popularly referred to as a "beeper." A beeper had been attached to three small aircraft which were used by the defendants to transport marijuana from Mexico into the State of New Mexico. Prior to trial the defendants filed a motion to suppress on the ground that the installation and use of the beeper violated Fourth Amendment rights. After an evidentiary hearing, the trial court denied the motion to suppress. This ruling is the only matter urged by Stone on appeal as ground for reversal. The only ground for reversal urged by Stone's sister, Ms. Chavez, is the alleged insufficiency of the evidence tying her in with the crimes charged in the indictment.

This particular investigation was initiated by one Mike Dwyer, detective in the Albuquerque Police Department. Dwyer was suspicious that certain small aircraft, which were either owned by Stone or made available to him, were being used to transport marijuana from Mexico into New Mexico. The planes were tied down on runway aprons at the Albuquerque airport. During the course of his investigation Dwyer conferred with one Harold Briscoe, a United States Customs Air Officer.

Based on the results of his continuing investigation, Dwyer made application to a New Mexico State District Judge for an order authorizing the installation of a tracking device on or in the three aircraft. Dwyer and a fellow detective on the Albuquerque police force submitted a lengthy affidavit to the state judge in support of their request for an authorization order. This affidavit was also signed by Agent Briscoe. An order issued authorizing the installation and monitoring of a tracking device in the three aircraft for a sixty-day period. Shortly prior to the expiration of the sixty-day period, Dwyer by written application, requested a sixty-day extension of the authorization order. This request for an extension was supported by Dwyer's lengthy affidavit, which, *inter alia*, incorporated by reference the recitals in the first

affidavit and also recounted events which had transpired within the intervening sixty days. Based on these representations, the state judge extended the authorization order for an additional sixty days.

Shortly after the extension order, on July 10, 1977, Dwyer's investigative efforts bore fruit. On that date Stone and another person took off in two of the small aircraft from the Albuquerque airport, with a beeper attached to each craft. These two planes flew into Mexico, landed and picked up a load of some 1,400 pounds of marijuana and then flew back to New Mexico. Law enforcement authorities followed the two aircraft and were materially aided in their pursuit by monitoring the beeper signals.

En route back, Stone became suspicious that he and his associate were being followed. Accordingly, Stone split off and made an emergency landing some miles away from the makeshift airstrip where he had intended to touch down. Stone's associate, however, proceeded on course and landed at the clandestine landing field located on Stone's property near McIntosh, New Mexico. The authorities followed, again aided by use of the beeper, and their plane flew over the area where the other plane had just landed. Apparently believing that the second plane was the one piloted by Stone, someone on the ground turned on a string of lights which were intended to aid in night landing. In the meantime the pursuing enforcement officials had radioed their location to others, and as a result, police using helicopters closed in on the landed aircraft. As they descended, the officers, by use of search lights, observed persons unloading marijuana from the plane into a truck. Several persons fled, but Pansy Stone Chavez and the pilot of the plane were arrested at the scene, and approximately 800 pounds of marijuana were seized.*

On appeal Stone contends that the installation of the beeper and the surveillance of his plane through use of the beeper for a period of approximately 70 days after the original authorization order was improper on three grounds: (1) the affidavit in support of the extension order was insufficient; (2) the extension order was issued for an unspecified length of time and was therefore unreasonable; and (3) neither the application for authorization to install the beeper, nor the application to extend the time that the beeper could be used, complied with Fed.R.Crim.P. 41(b).

Although we propose to dispose of this appeal on the basis that it has been presented to us, we recognize the more basic underlying question of whether the installation of a beeper on an airplane, or an automobile, and use of that beeper to monitor the movement of an airplane, or automobile, is a "search" within the meaning of the Fourth Amendment. This is a subject upon which there is some diversity of judicial thinking. See, for example, *United States v. Bruneau*, 594 F.2d 1190 (8th Cir. 1979), where under the facts of that case neither the installation of the beeper or its subsequent use was held to be a "search" within the meaning of the Fourth Amendment. However, in *United States v. Holmes*, 521 F.2d 859 (5th Cir. 1975), the Fifth Circuit, *inter alia*, upheld the ruling of the trial court that installation of a beeper on a motor vehicle was a search within the meaning of the Fourth Amendment. Upon rehearing in *Holmes*, the Fifth Circuit by an equally divided court upheld the trial court's suppression order. *United States v. Holmes*, 537 F.2d 227 (5th Cir. 1976). For a general discussion of this entire matter, see Note, *Tracking Katz: Beepers, Privacy, and the Fourth Amendment*, 86 Yale L.J. 1461 (1977).

For the purpose of our present discussion, we shall assume, without deciding, that the installation of the beepers and their use in the present case constituted a "search" within the meaning of the Fourth Amendment. As indicated, we shall then dispose of this appeal on the basis that it

---

* The remaining 600 pounds of marijuana and Stone's disabled aircraft were recovered on July 12, 1977, through the aid of the beeper which continued to transmit following Stone's crash landing. Stone surrendered to the authorities.

has been presented to us. The first ground urged for finding that this was an unreasonable search is that the affidavit for an extension order was legally insufficient to warrant the extension order. We do not agree. The supplemental affidavit in support of the extension order, as well as the affidavit in support of the original authorization order, have been examined and we find each more than adequate. Each affidavit consists of some six pages and both contain commendable detail. The fact that nothing developed within the initial sixty-day period does not in itself defeat the request for an extension. The extension order was fully justified on the basis of the affidavits, and the wisdom in issuing it was demonstrated, admittedly via hindsight, when ten days after its issuance, Stone and his associate took off for Mexico and smuggled into the United States some 1,400 pounds of marijuana.

Complaint is also made that the extension order was open-ended and contained no time limitation. It is argued that such fact, in itself makes the extension order unreasonable. The supplemental record clearly indicates, however, that the extension order contained the same time limitation as did the original order, namely 60 days. This argument, then, is apparently based on an erroneous premise.

■ The third ground urged for holding the installation and use of the beeper to be improper is the failure to comply with the provisions of Fed.R.Crim.P. 41(b). Specifically, counsel argues that the authorization order and the extension order issued by the state court of record were based on the affidavits of two Albuquerque police officers, and that Rule 41(a) only authorizes the issuance of a warrant upon the request of a "federal law enforcement officer or an attorney for the government." The answer to this argument is that the state court orders here in question did not purport to be issued pursuant to Rule 41. They were issued pursuant to state law, at a time when the investigation was essentially a state investigation. *United States v. Millar*, 543 F.2d 1280 (10th Cir. 1976). The fact that federal authorities participated in the tracking of the airplanes does not affect the validity of the state court orders previously issued.

■ The fruits of a search conducted under the authority of a validly issued state warrant may be used in a federal prosecution if the warrant satisfies constitutional requirements and does not violate any rule-embodied policy designed to protect the integrity of federal courts or to govern the conduct of federal officers. *United States v. Sellers*, 483 F.2d 37 (5th Cir. 1973). We are here concerned with a state court order, validly issued under state law, which order has no constitutional infirmity and does not violate any rule-embodied policy designed to protect the integrity of federal courts or to govern the conduct of federal officers. The argument that the state court orders were issued on the basis of affidavits of state officials, as opposed to federal officers, is unavailing.

■ The only ground urged by Ms. Chavez for reversal is the sufficiency of the evidence. Ms. Chavez was arrested at the scene where the first plane had landed on a makeshift landing field located in a remote area near McIntosh, New Mexico. As above mentioned, persons were in the process of unloading the marijuana from the plane onto a truck when the authorities arrived. Several of those who were assisting fled the scene, but Ms. Chavez and the pilot of the plane were apprehended and placed under arrest.

The landing field was in a very remote area. Lights had been strung along the airstrip to assist in night landing. A house trailer was adjacent to the landing strip. Ms. Chavez' brother, Stone, owned the land in question. It was the Government's theory of the case that Ms. Chavez was a part of the "ground crew." We think the evidence logically permits such an inference. Ms. Chavez exercised her admitted constitutional right not to testify. However, having done so, she cannot now complain that, based on a permissible inference drawn from the Government's evidence, an experienced trial judge has found her guilty.

Judgment affirmed.