**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Harold Dean BUTTS, Defendant-Appellee.**

No. 82–1260.

United States Court of Appeals, Fifth Circuit.

Aug. 1, 1983.

Opinion on Granting of Rehearing En Banc Oct. 25, 1983.

Sidney Powell, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellant.

Gerald H. Goldstein, Robert B. Hirschhorn, San Antonio, Tex., for defendant-appellee.

Before CLARK, Chief Judge, GOLDBERG and POLITZ, Circuit Judges.

GOLDBERG, Circuit Judge:

Use of the electronic tracking device, or "beeper," raises novel and difficult fourth amendment problems. This case presents such an issue. The government appeals from the district court's grant of a motion to suppress all evidence obtained from a beeper installed and maintained in the interior of a plane beyond the time limit set in a court order. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

### A. Facts

On June 19, 1981, U.S. Customs pilot Lawrence R. Nichols executed an affidavit requesting court authorization to install and maintain an electronic tracking device within a twin-engine Beechcraft bearing the registration number N4926B. The affidavit included allegations indicating that the aircraft might be used to import marijuana into the United States from a foreign country. On the basis of the information contained in the affidavit, U.S. Magistrate Jamie Boyd issued a warrant authorizing the installation. The warrant provided as follows:

> You are hereby commanded to search forthwith and to install appropriate electronic aircraft tracking equipment, limited to a transponder and/or beeper, in the aforedescribed aircraft serving this warrant and complying with this order at any time of the day or night within ten days and to return this warrant specifying the date of installation. Transponder or beeper to remain in aircraft for a period not to exceed thirty days.

Record on Appeal, Government Exhibit 6. Pursuant to this warrant, U.S. Customs pilot Gerald Weatherman installed the beeper in the aircraft. At 10:45 p.m. on June 19, 1981, while the aircraft was parked at the airport in Seguin, Texas, Weatherman entered the cabin of the aircraft and secreted the beeper in its interior.

The original warrant authorizing installation and maintenance of the beeper expired on July 19, 1981. Two days later, on July 21, 1981, Weatherman appeared before Magistrate Boyd seeking an extension of

the original authorization. In requesting the extension, Weatherman executed no additional affidavit and relayed no additional material facts to the court. Nevertheless, Magistrate Boyd granted the extension request. The extension order provided as follows:

YOU ARE HEREBY GRANTED an extension forthwith on the above described Beechcraft B–50 aircraft, bearing registration number N4926B, a transponder signaling device to remain on aircraft N4926B for a period of 30 days. You are also directed to remove the transponder from aircraft N4926B no later than 30 days from the expiration of the original court order (expiration date 07/19/81) that authorized the installation of the electronic equipment. You are also directed to make any necessary repairs to said equipment in the 30-day period, as appropriate for proper maintenance.

Record on Appeal, Government Exhibit 7. Thus, under the extension order, the government was directed to remove the beeper no later than August 19, 1981.[1]

Despite the explicit directive in the extension order that the beeper be removed, the government failed to do so. Although the removal date came and went, the government sought no further extension period from Magistrate Boyd and made no attempt to comply with the order requiring the beeper's removal. Accordingly, the still-operative tracking device remained inside the aircraft past August 19, 1981.

On August 22, 1981, the Houston Control Center began tracking an aircraft emitting the special frequency signal associated with U.S. Customs beepers. U.S. Customs officer Bobby Richardson monitored the airplane's movements on a radar scope and directed the effort to intercept the target craft. Aided by Richardson's electronic surveillance, other Customs officials manning Customs aircraft sighted the target craft and followed it to its destination. The target craft, a twin-engine Beechcraft bearing the registration number N4926B, landed at Castroville, Texas, at approximately 2:20 a.m.; Customs officials immediately arrested its pilot, appellee Harold Dean Butts, and searched the airplane. The search produced a quantity of marijuana and various other items of evidence.

### B. Procedural History

Appellee Butts was charged with importing marijuana into the United States from Mexico, in violation of 21 U.S.C. §§ 960(a)(1), 952(a) (1976), possession of marijuana with intent to distribute it, in violation of 21 U.S.C. § 841(a)(1) (1976), and carrying a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c)(2) (1976). Appellee moved to suppress all evidence obtained as a result of the monitoring of the beeper installed inside the aircraft he was piloting on August 22 and 23, 1981. Following a lengthy hearing on the matter, the United States District Court for the Western District of Texas granted the motion to suppress.

Noting that the Fifth Circuit had never considered the legality of a warrantless installation of a beeper inside a vehicle, the district court held that "in the absence of an applicable exception to the warrant requirement, installation of a beeper requiring physical entry into an aircraft demands a search warrant." Record on Appeal, Vol. II at 14. The court noted that in this case the government had obtained a search warrant to install the beeper, but also observed that the government had failed to obey the magistrate's directive to remove the beeper by a particular date. *Id.* Thus, the district court framed the issue as follows:

The tracking of Aircraft N4926B on August 22 and 23, 1981, and the seizing of all evidentiary items from the aircraft on August 23, 1981, were made possible solely because the beeper remained on board past the expiration date of August 19, 1981. Should the failure to have removed the beeper by August 19 require the sup-

---

1. The original court order encompassed the 30-day period following June 19, 1981. This period would have ended on July 19, 1981, a Sunday. Under Fed.R.Crim.P. 45(a), however, the original authorization arguably did not expire until Monday, July 20, 1981. Thus, the extension order expired on August 19, 1981.

pression of all evidence obtained from monitoring the beeper after that date? *Id.*[2]

By analogy to the wiretapping provisions of Title III of the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510–2520 (1976), the district court determined that in this case surveillance of the aircraft after the termination date set forth in the court order was unlawful.

> Not only had the order authorizing installation of the beeper expired, but Customs failed to obey an affirmative directive to remove the beeper no later than August 19, 1981.
>
> ... [W]hen such beepers are installed inside an airplane under court order, there must be some guideline to dictate by what time they must be removed.

Record on Appeal, Vol. II at 15. Accordingly, the court suppressed all evidence obtained as a result of the beeper's continued presence in the airplane past the termination date of the warrant. The government appeals from the district court's order, pursuant to 18 U.S.C. § 3731 (1976).

## II. ISSUES ON APPEAL

The government argues that the district court's suppression of evidence was in error. Viewing this as essentially a beeper monitoring case, the government relies heavily upon the recent United States Supreme Court decision in *United States v. Knotts,* —— U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). Basically, the government claims that its failure to remove the beeper as required by the court order does not invalidate the stop and search of the airplane, because warrantless monitoring of beeper signals is permissible under *Knotts.*

Our approach to this case is somewhat different from that urged by the government. We begin with a bit of background about beepers, including a short history of Fifth Circuit "beeper jurisprudence" and a review of the development of a bifurcated analysis in beeper cases. We continue by applying that bifurcated analysis, examining the installation of the beeper and its subsequent monitoring as discrete issues. With respect to warrantless beeper monitoring, we consider the applicability of *Knotts* to the case at bar. With respect to beeper installation—the aspect of this case that commands most of our attention—we evaluate the attachment and maintenance of a beeper in the interior of a vehicle in terms of the fourth amendment and the protections it affords. We now turn to our discussion of these issues.

## III. JEEPERS CREEPERS, WHERE'D YOU GET THOSE BEEPERS?: ELECTRONIC TRACKING DEVICES AND THE FOURTH AMENDMENT

### A. A Bit of Background About Beepers [3]

An electronic tracking device—also called a "beeper," "beacon," or "transponder"—is a miniature, battery-powered radio trans-

---

**2.** Before turning to the merits of this question, the district court addressed the issue of Butts' standing to contest the installation and monitoring of the beeper. First, the court held that Butts' status as the pilot of the target craft during its August 22 and 23 flight adequately established his standing to complain of the monitoring of the beeper. Record on Appeal, Vol. II at 14. Second, in evaluating Butts' standing with respect to the installation of the beeper, the court referred to the government affidavit executed to obtain the original warrant. The affidavit described the pilot of the subject aircraft with some particularity; the description matched that of appellee Butts. Accordingly, the court found that Butts had possession and control of the aircraft at the time of installation sufficient to confer standing to challenge that installation. *Id.* at 10 n. 1,

14–15. Neither party disputes these conclusions on appeal.

**3.** *See generally* Carr, *Electronic Beepers,* 4 Search & Seizure L.Rep. No. 4 (1977); Dowling, *"Bumper Beepers" and the Fourth Amendment,* 13 Crim.L.Bull. 266 (1977); Marks & Batey, *Electronic Tracking Devices: Fourth Amendment Problems and Solutions,* 67 Ky.L.J. 987 (1978); Note, *Electronic Tracking Devices & Privacy: See No Evil, Hear No Evil, But Beware of Trojan Horses,* 9 Loy.U.Chi.L.J. 227 (1977); Note, *Finders Keepers, Beepers Weepers: United States v. Knotts—A Realistic Approach to Beeper Use and the Fourth Amendment,* 27 St. Louis U.L.J. 483 (1983); Note, *Tracking Katz: Beepers, Privacy, and the Fourth Amendment,* 86 Yale L.J. 1461 (1977); Annot., 57 A.L.R.Fed. 646 (1980).

mitter that emits a recurrent signal at a set frequency. When monitored by directional finders, the beeper provides information as to the location and movement of the object to which it is attached. A beeper is incapable of transmitting conversation or recording sounds. *See United States v. Bailey,* 628 F.2d 938, 939 n. 1 (6th Cir.1980).[4] For this reason, beepers do not fall within the definition of wiretapping devices. *See* Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2510(5) (1976). Predictably, the use of beepers by law enforcement officials to locate and track individuals suspected of criminal activity has generated a significant amount of litigation.

### 1. *Beepers in the Courts*

### a. Fifth Circuit[5]

The Fifth Circuit first addressed the fourth amendment problems associated with beeper use in *United States v. Holmes,* 521 F.2d 859 (5th Cir.1975). In *Holmes,* government agents attached an electronic tracking device under the right rear wheel of Holmes' van, without first obtaining a warrant. Subsequent monitoring of the beeper led to the seizure of 1200 pounds of marijuana and the arrest of nine persons. The *Holmes* panel held that the installation of the electronic tracking device was a search under the fourth amendment and affirmed the district court's suppression of the evidence obtained as a result of monitoring the beeper. *Id.* at 864, 867. The government's application for rehearing en banc was granted, however, thus vacating the panel opinion. *United States v. Holmes,* 525 F.2d 1364 (5th Cir.1976); *see* 5th Cir.R. 17. On rehearing en banc, the court divided equally on the electronic tracking issue. *United States v. Holmes,* 537 F.2d 227, 227–28 (5th Cir.1976) (en banc). Thus, although the district court's suppression of the evidence was affirmed, the fourth amendment questions presented

by government use of tracking devices remained unanswered.

In decisions subsequent to *Holmes,* the Fifth Circuit generally avoided the potential fourth amendment issues presented by the use of beepers. For example, in *United States v. Abel,* 548 F.2d 591 (5th Cir.), *cert. denied,* 431 U.S. 956, 97 S.Ct. 2678, 53 L.Ed.2d 273 (1977), the owner of an aircraft expressly consented to the government's installation of a tracking device on his plane. The government stipulated that the attachment of the beeper was a search, but the court held that the search was reasonable because the plane's owner had consented. *Id.* at 592. *See also United States v. Cheshire,* 569 F.2d 887, 888 (5th Cir.1978) (if search occurred, owner's consent to placement of beeper came within third-party consent exception to warrant requirement). In *United States v. Reyes,* 595 F.2d 275 (5th Cir.1979), the court pretermitted consideration of the appellants' objections to the installation and use of a transponder in an aircraft for fourteen months, holding that the appellants lacked standing to object to the putative search. *Id.* at 278–79. Thus, prior to 1980, no binding Fifth Circuit authority squarely addressed the fourth amendment considerations of beeper use.

Then came *United States v. Michael,* 645 F.2d 252 (5th Cir.) (en banc), *cert. denied,* 454 U.S. 950, 102 S.Ct. 489, 70 L.Ed.2d 257 (1981). *Michael* involved the warrantless installation and monitoring of an electronic tracking device attached to the exterior of a van. Using the beeper, government agents located a warehouse where various evidence of criminal activity was found. The district court suppressed the evidence as fruit of the warrantless installation of the beeper, holding that the government's failure to obtain a search warrant prior to installation violated the fourth amendment. A panel of the Fifth Circuit affirmed the district

---

**4.** For a description of the technical aspects of a beeper's operation, see Dowling, *supra* note 3.

**5.** Due to the nature of the case at bar, we confine our review of the Fifth Circuit literature to cases involving beepers attached to vehicles. Beepers also are commonly installed in

containers and contraband. *See, e.g., United States v. Sheikh,* 654 F.2d 1057 (5th Cir.1981); *United States v. Lewis,* 621 F.2d 1382 (5th Cir.1980); *United States v. Pringle,* 576 F.2d 1114 (5th Cir.1978); *United States v. Bishop,* 530 F.2d 1156 (5th Cir.1976); *United States v. Perez,* 526 F.2d 859 (5th Cir.1976).

court's suppression of the evidence. *United States v. Michael*, 622 F.2d 744 (5th Cir. 1980). On rehearing, however, the court en banc reversed the district court. *United States v. Michael*, 645 F.2d 252 (5th Cir. 1981) (en banc).

The en banc court in *Michael* held that reasonable suspicion alone was adequate to support the warrantless installation and monitoring of a beeper attached to the exterior of an automobile. The court began by assuming that the installation of the beeper was a search.[6] *Id.* at 256. The court then applied a "dual privacy and intrusiveness analysis" to the facts of the case. *Id.* The court first recognized that an individual's expectation of privacy in an automobile is less than in other property, emphasizing that "Michael's expectation of privacy with respect to the *movements* of his automobile was substantially reduced." *Id.* at 258 (emphasis added; footnote omitted). Second, the court observed that the intrusion occasioned by the placement of the beeper was minimal. Specifically noting that the interior of the van had not been searched, the court commented that "[t]he actual installation of the beeper was much less intrusive than the typical stop and frisk." *Id.* Accordingly, the court held that the government agents' reasonable suspicion that Michael was engaged in criminal activity justified the installation of the beeper. *Id.* Turning to the monitoring aspect of the case, the court concluded that monitoring the beeper did not violate Michael's reasonable expectation of privacy because the van was exposed to public view as it traveled over public roads. Therefore, the court held that government agents did not violate Michael's fourth amendment rights by monitoring the beeper, because they had reasonable suspicion to believe that he was conspiring to manufacture a controlled substance. *Id.* Stating that the governmental interest in eliminating illegal drug traffic was a persuasive reason for permitting such a minimally intrusive prac-

tice, the court concluded that neither the installation nor the monitoring of the beeper attached to the exterior of Michael's van violated the fourth amendment. *Id.* at 259.

*Michael* clearly held that government agents need not obtain a warrant prior to installing an electronic tracking device to the *exterior* of a vehicle. As later cases have recognized, however, the propriety of warrantless beeper installation in the *interior* of a vehicle is a question that remains open. In *United States v. Cady*, 651 F.2d 290 (5th Cir.1981), *cert. denied*, 455 U.S. 919, 102 S.Ct. 1274, 71 L.Ed.2d 459 (1982), the court assumed without deciding that a beeper installation requiring physical entry of an aircraft was an act sufficiently intrusive to be deemed a search. The court in *United States v. Flynn*, 664 F.2d 1296 (5th Cir.), *cert. denied*, 456 U.S. 930, 102 S.Ct. 1979, 72 L.Ed.2d 446 (1982), did not address the legality of warrantless beeper installation inside a conveyance because it held that the government's intrusion into the aircraft there was justified by a valid warrant. The *Flynn* court read *Michael* as "suggest[ing], at least inferentially, that its holding is limited to cases in which attachment of the beeper involves no physical intrusion into the conveyance." *Id.* at 1300 n. 9. Likewise, in *United States v. Parks*, 684 F.2d 1078 (5th Cir.1982), government agents entered a plane's interior through a closed door and affixed a beeper to the plane's interior. Specifically noting that the *Michael* decision was not dispositive of the legality of the installation, maintenance, and monitoring of the beeper in *Parks*, the court held that the appellants lacked standing to challenge the beeper-related issues. *Id.* at 1083 & n. 6. Most recently, in *United States v. Kupper*, 693 F.2d 1129 (5th Cir.1982), this court held that the installation of a beeper inside an airplane pursuant to a limited court order was permissible because the authorization order was supported by probable cause. The

---

**6.** The court noted the view of seven specially concurring judges that the installation of the beeper on the van was not a search or seizure and therefore did not implicate any fourth amendment interests. 645 F.2d at 256. *See id.* at 259–60 (Clark, J., concurring). The court's ultimate determination that the installation of the beeper was permissible made resolution of the "search" question unnecessary.

court commented that "[t]his case does not present a still undecided issue in our Circuit: whether the installation of an electronic beeper to the interior of an aircraft is a 'search' within the meaning of the Fourth Amendment." *Id.* at 1130 n. 1.

As these references to the scope of *Michael*'s holding illustrate, *Michael* does not govern all situations involving use of electronic tracking devices. In particular, post-*Michael* cases indicate a distinct hesitancy to extend that holding to beeper installations inside conveyances. Until now, however, no Fifth Circuit case has squarely presented the situation these cases have foreshadowed.

### b. The Supreme Court

The Supreme Court recently addressed the issue of beeper monitoring in *United States v. Knotts,* — U.S. ——, 103 S.Ct. 1081, 75 L.Ed.2d 55 (1983). In *Knotts,* law enforcement officers believed that certain individuals were purchasing chloroform for use in the manufacture of illegal drugs. The officers obtained the seller's consent to place a beeper inside a drum of chloroform that was sold to the suspects. Using the beeper signals and visual surveillance, the officers ultimately traced the chloroform to a secluded cabin. The officers then secured a search warrant and searched the cabin, where they discovered a drug laboratory. After the district court denied a motion to suppress evidence based on the warrantless monitoring of the beeper, Knotts was convicted for conspiring to manufacture controlled substances. The Eighth Circuit Court of Appeals reversed the conviction, holding that the warrantless monitoring of the beeper was prohibited by the fourth amendment because its use violated Knotts' reasonable expectation of privacy. *United States v. Knotts,* 662 F.2d 515 (8th Cir. 1981).

The United States Supreme Court reversed the court of appeals, holding that the monitoring of beeper signals was neither a "search" nor a "seizure" within the contemplation of the fourth amendment. 103 S.Ct. at 1087. The Court was careful to note that the installation of the beeper was not an issue in the case. "Respondent does not challenge the warrantless installation of the beeper in the chloroform container, suggesting in oral argument that he did not believe that he had standing to make such a challenge . . . . [W]e have not before and do not now pass on the issue." *Id.* at 1084 n. **.[7] Turning to the potential fourth amendment concerns raised by beeper monitoring, the Court equated such surveillance with "the following of an automobile on public streets and highways." *Id.* at 1085. The Court then held that "[a] person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *Id.* at 1085. The Court viewed the monitoring of the beeper as no more than a sense-enhancement device, akin to a searchlight. *Id.* at 1086 (quoting *United States v. Lee,* 274 U.S. 559, 563, 47 S.Ct. 746, 748, 71 L.Ed. 1202 (1927)). Accordingly, the Court held that the monitoring of beeper signals was not a "search" or "seizure" under the fourth amendment. *Id.* 103 S.Ct. at 1087.[8]

### 2. *A Bifurcated Analysis*

*Knotts* clarified the present state of "beeper jurisprudence" in two respects. First, the *Knotts* Court employed a bifurcated analytical framework for examining the fourth amendment implications of beeper use, separating the installation or attachment of the tracking device from the monitoring of its signals. Second, *Knotts* focused on the monitoring aspect of beeper use and concluded that monitoring—as dis-

---

**7.** Three concurring justices emphasized that Knotts had not challenged the installation of the beeper in the drum. *See* 103 S.Ct. at 1087 (Brennan, J., concurring); *id.* at 1088 (Stevens, J., concurring).

**8.** The Court emphasized that nothing in the record indicated that the beeper signal was received or relied upon after it indicated that the chloroform drum had reached the cabin. "[T]here is no indication that the beeper was used in any way to reveal information as to the movement of the drum within the cabin, or in any way that would not have been visible to the naked eye from outside the cabin." 103 S.Ct. at 1087.

tinguished from installation—impinged upon no fourth amendment values.

The bifurcated framework adopted in *Knotts* has been endorsed by courts and commentators alike. *See United States v. Bailey,* 628 F.2d 938 (6th Cir.1980); *United States v. Bruneau,* 594 F.2d 1190 (8th Cir. 1979); *United States v. Miroyan,* 577 F.2d 489 (9th Cir.), *cert. denied,* 439 U.S. 896, 99 S.Ct. 258, 58 L.Ed.2d 243 (1978); Marks & Batey, *Electronic Tracking Devices: Fourth Amendment Problems and Solutions,* 67 Ky. L.J. 987 (1978); Note, *Finders Keepers, Beepers Weepers:* United States v. Knotts—*A Realistic Approach to Beeper Use and the Fourth Amendment,* 27 St. Louis U.L.J. 483 (1983); Note, *Tracking Katz: Beepers, Privacy, and the Fourth Amendment,* 86 Yale L.J. 1461 (1977); Annot., 57 A.L.R.Fed. 646 (1980). Our prior Fifth Circuit cases also indicate an awareness of the distinction between the physical act of attaching a tracking device to an object and the use of the device, once attached, to monitor the object's location. *See Parks,* 684 F.2d at 1084; *Michael,* 645 F.2d at 256–58. In analyzing the case at bar, we too will treat installation and monitoring as two distinct questions. We now turn to our examination of these issues.

### B. Beeper Monitoring

In applying this bifurcated framework to the facts of this case, we begin with the second branch of the analysis. As discussed above, *Knotts* stands for the proposition that the mere monitoring of an electronic tracking device is not a "search" or "seizure" under the fourth amendment, assuming that the installation of the device was permissible. *See also Parks,* 684 F.2d at 1086 ("*Absent an invasion of ownership or proprietary rights,* we hold that neither pilot nor passenger has a legitimate expectation of privacy in the movement of the plane through the public airways." (emphasis added)). We do not read *Knotts* to say, however, that monitoring of a beeper is permissible regardless of the circumstances surrounding its installation. Even if moni-

torial use of a tracking device does not constitute a search or seizure, the installation and maintenance of the device may potentially violate fourth amendment precepts. *See Bruneau,* 594 F.2d at 1194; *Miroyan,* 577 F.2d at 492. In our view, the question presented in the instant case is not the propriety of turning on the listening mechanism to monitor the beeper; rather, the critical issue confronting us arises from the government's placing and leaving in place the sending mechanism in the interior of the aircraft. Thus *Knotts,* while informative, is not dispositive.

### C. Beeper Installation

#### 1. Search or Seizure?

Turning now to the first branch of our bifurcated analytical framework, we consider the fourth amendment implications of the installation and maintenance of an electronic monitoring device in the interior of an aircraft. In our view, the term "installation" in this context encompasses the government's initial entry into the aircraft for purposes of attaching the beeper, the actual physical attachment of the device to the interior of the aircraft, and the continued presence of the beeper inside the aircraft for the period of its installation. The initial question presented is whether such installation of a tracking device is a "search" or "seizure" within the meaning of the fourth amendment.[9]

The starting point for our discussion is the fourth amendment itself, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. In determining whether this particular form of governmen-

---

**9.** As noted earlier, the court in *Michael* assumed without deciding that the installation of a beeper on the exterior of an automobile was a

"search." The court's analysis in that case was directed to the issue of the "reasonableness" of such a search.

tal intrusion rises to the level of a fourth amendment "search" or "seizure," we turn to the benchmark case of *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). *Katz* presented the question whether warrantless electronic monitoring of the contents of an individual's telephone conversations violated the fourth amendment. The government argued that no violation had occurred because there was no physical intrusion into the telephone booth from which Katz placed the calls. The Court disagreed, noting that "the Fourth Amendment protects people, not places." *Id.* at 351, 88 S.Ct. at 511. Finding that "[t]he Government's activities in electronically listening to and recording the petitioner's words violated the privacy upon which he justifiably relied while using the telephone booth," *id.* at 353, 88 S.Ct. at 512, the Court held that the warrantless eavesdropping "constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id.*

The Court restated the oft-cited *Katz* test in *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979).

Consistently with *Katz,* this Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action. *E.g., Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, and n. 12 (1978); *id.,* at 150, 151, 99 S.Ct., at 434, 435 (concurring opinion); *id.,* at 164, 99 S.Ct., at 441 (dissenting opinion); *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); *United States v. Miller,* 425 U.S. 435, 442, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976); *United States v. Dionisio,* 410 U.S. 1, 14, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973); *Couch v. United States,* 409 U.S. 322, 335–336, 93 S.Ct. 611, 619–620, 34 L.Ed.2d 548 (1973); *United States v. White,* 401 U.S. 745, 752, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) (plurality opinion); *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S.Ct. 2120, 2123, 20 L.Ed.2d 1154 (1968); *Terry v. Ohio,* 392

U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). This inquiry, as Mr. Justice Harlan aptly noted in his *Katz* concurrence, normally embraces two discrete questions. The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," 389 U.S., at 361, 88 S.Ct. at 516— whether, in the words of the *Katz* majority, the individual has shown that "he seeks to preserve [something] as private." *Id.,* at 351, 88 S.Ct., at 511. The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable,' " *id.,* at 361, 88 S.Ct., at 516— whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is "justifiable" under the circumstances. *Id.,* at 353, 88 S.Ct. at 512. See *Rakas v. Illinois,* 439 U.S., at 143–144 n. 12, 99 S.Ct., at 430; *id.,* at 151, 99 S.Ct., at 434 (concurring opinion); *United States v. White,* 401 U.S., at 752, 91 S.Ct., at 1126 (plurality opinion).

*Id.* at 740–41, 99 S.Ct. at 2580 (footnote omitted).

Applying the *Katz* analysis to this case, we hold that the installation of an electronic tracking device in the interior of a vehicle or conveyance is a "search" within the meaning of the fourth amendment. The governmental intrusion presented here was a probing quest for evidence that entailed a physical invasion by law enforcement officials into the cockpit of an aircraft, physical attachment of a surveillance device to the interior of that aircraft, and the continued presence of the tracking device within the cockpit for over sixty days. In our view, an individual clearly has a legitimate expectation that governmental agents will not encroach upon the interior of a vehicle in such a fashion. Although recent cases have alluded to the diminished expectation of privacy associated with automobiles, none has held that an intrusion into a vehicle's interior is not a "search." *See, e.g., United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982); *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality); *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct.

1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed.2d 543 (1925). We decline to do so now.[10]

### 2. *Fourth Amendment Protection*

Having concluded that the interior installation of a tracking device constitutes a "search," we now consider the fourth amendment requirements necessary to conduct such a search. The fourth amendment generally has been interpreted to include the requirement that searches normally be performed pursuant to a search warrant issued in compliance with the warrant clause. *Arkansas v. Sanders,* 442 U.S. 753, 758, 99 S.Ct. 2586, 2589, 61 L.Ed.2d 235 (1979).

> The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (footnotes omitted).

*Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). Thus, although a few "jealously and carefully drawn"[11] exceptions exist, in the ordinary case a search of private property must be reasonable and must be made pursuant to a search warrant based on probable cause. *Sanders,* 442 U.S. at 758, 99 S.Ct. at

2590. The question presented here is whether the intrusion required to install a beeper in the interior of an aircraft necessitates the interposition of the warrant requirement.

We commence by considering the applicability of this court's en banc opinion in *Michael* to the question posed. As noted above, *Michael* created a limited exception to the warrant requirement for the installation of a beeper on the exterior of an automobile. Assuming that the exterior attachment of the beeper was a search, the court held that reasonable suspicion alone was adequate to support such a beeper installation. *Michael,* 645 F.2d at 257. Because the government agents in *Michael* had a reasonable suspicion that Michael was engaged in criminal activity, the court held that the warrantless installation of the beeper in that case did not violate the fourth amendment. *Id.*

In evaluating the fourth amendment concerns associated with the exterior attachment of beepers, the *Michael* court employed a "dual privacy and intrusiveness analysis." *Id.* at 256. First, the court examined the scope of the individual's expectation of privacy in his automobile. *Id.* at 257–58.[12] Second, the Court evaluated the degree of intrusion occasioned by placement of the beeper. *Id.* at 258. Considering the individual's diminished expectation of privacy in an automobile parked in a public place, the minimal nature of the intrusion necessitated by exterior attachment, and the governmental interest in eliminating il-

---

**10.** *United States v. Johnson,* 431 F.2d 441 (5th Cir.1970) (en banc), is not to the contrary. The *Johnson* court held that the fourth amendment was not violated by the opening of a car door by a police officer to verify the identification number of a vehicle that he had reasonable cause to believe was stolen. The court's opinion was expressed in the alternative: either the challenged intrusion was not a "search" within the meaning of the fourth amendment, or the inspection was reasonable under the fourth amendment. Unlike the intrusion associated with the interior installation of a beeper, the inspection that occurred in *Johnson* was limited in scope, purpose, and duration. Further, the police officer in *Johnson* performed the inspection with the consent of the car owner's wife. *United States v. Johnson,* 413 F.2d 1396,

1399 (5th Cir.1969) (panel opinion). Thus, *Johnson* does not require a holding of "no search" in the instant case.

**11.** *Jones v. United States,* 357 U.S. 493, 499, 78 S.Ct. 1253, 1257, 2 L.Ed.2d 1514 (1958).

**12.** In this section of the opinion, the court's treatment of the installation of the beeper seems to have merged with its analysis of beeper monitoring. For instance, the court noted that "Michael drove the van on public roads during the daytime," 645 F.2d at 257, and ultimately held that "Michael's legitimate expectation of privacy with respect to the *movements* of his automobile was substantially reduced." *Id.* at 258 (emphasis added).

legal drug traffic, the court determined that, in connection with exterior beeper installation, reasonable suspicion alone satisfied the fourth amendment. *Id.* at 256, 259.

*Michael* teaches that privacy and intrusion are the measuring rods to be used in evaluating the fourth amendment protections required for beeper installation. In *Michael,* a "substantially reduced" expectation of privacy and the minimal nature of the intrusion permitted the exterior installation and maintenance of a beeper based on reasonable suspicion alone. Application of this privacy/intrusiveness analysis to the circumstances surrounding *interior* installation of tracking devices, however, compels a different result.

In regard to the privacy element of the *Michael* analysis, we acknowledge that an individual holds a diminished expectation of privacy with respect to automobiles and other conveyances. Diminished though it may be, however, an individual's expectation of privacy with regard to the interior of a vehicle is an interest worthy of protection. As the Supreme Court observed in *Cardwell:* "This is not to say that no part of the interior of an automobile has Fourth Amendment protection; the exercise of a desire to be mobile does not, of course, waive one's right to be free of unreasonable government intrusion." 417 U.S. at 591. The passenger compartment or cabin of a vehicle is an enclosed, self-contained area somewhat sheltered from public view and unexposed to public contact. Given these qualities, it seems self-evident that the interior of a vehicle outranks its rear bumper and its location on the privacy scale.[13] A yacht, an ocean liner, a mobile home, a camper, and Air Force One are all vehicles, yet surely their interiors are cloaked by privacy's veil. Thus, we believe the interior installation of a tracking device implicates privacy interests more significant than those considered in *Michael.*

Turning to the intrusion factor of the *Michael* analysis, we are likewise persuaded that the nature and scope of the intrusion occasioned by the installation of a tracking device in the interior of a vehicle is more egregious than that involved in *Michael.* In order to implant a tracking device inside a vehicle, government agents first must surreptitiously invade its passenger compartment or cabin, by opening a door, forcing a lock, or using a "common key." Following this initial physical intrusion, the device is affixed to the interior of the vehicle, where it remains long after the agents who planted it have withdrawn. In a very real sense, the beeper serves as a surrogate police presence that remains within the vehicle's interior and converts the area into a covert broadcasting station. Given the capacity of such devices to impart information, the introduction of these government-controlled objects into an area in which an individual legitimately retains an expectation of privacy constitutes an offensive invasion of fourth amendment values. The government, via its electronic counterpart, remains physically present within the interior of the vehicle from the moment its agents enter until the tracking device ceases to function. In this age of electronic wizardry, it is not too much to suppose that beepers soon will have virtually unlimited lifespans. The continuing intrusion of such a device into a privacy-cloaked area, an intrusion that could potentially last from here to eternity, mandates protections greater than those afforded by *Michael*'s "reasonable suspicion" rule.[14]

**13.** In *United States v. Hufford,* 539 F.2d 32 (9th Cir.1976), government agents obtained a court order authorizing placement of a beeper on the battery of a pickup truck. The court cautioned that "[h]ad the agents not resorted to a warrant, entrance into the garage and the opening of the truck's hood would have been an invasion of an area in which Hufford had a reasonable expectation of privacy." *Id.* at 34.

**14.** In *United States v. Parks,* 684 F.2d 1078 (5th Cir.1982), a government agent obtained a warrant authorizing installation of a transponder inside an airplane for 30 days. When the warrant expired, the agent presented to the court an affidavit requesting an extension of the original order. The judge notarized the affidavit but failed to issue a written extension. The transponder remained inside the plane and ultimately was used to track the aircraft and to obtain evidence of criminal activity. Although the court decided the case on standing grounds, it noted that the physical presence of the transponder device was arguably unlawful after the original warrant expired. *Id.* at 1087. The court also stated that "[w]here a beeper is

■ We reiterate our belief that the invasion of protected privacy caused by beeper installation in vehicle interiors extends far beyond the initial entry required to affix the tracking device; indeed, the intrusion endures for the life of the beeper. *See Berger v. New York,* 388 U.S. 41, 59, 87 S.Ct. 1873, 1883, 18 L.Ed.2d 1040 (1967) (prolonged period of electronic surveillance equivalent to "series of intrusions, searches, and seizures"). We are gravely disturbed by the prospect that such intrusions may continue *ad infinitum,* a concern echoed in the opinions of this and other circuits.[15] The surest way to guarantee that such an intrusion does not exceed reasonable bounds is to require judicial supervision of the initial installation and continued maintenance of a tracking device when it is secreted within a vehicle's interior. Accordingly, we hold that in the usual case a warrant based upon probable cause is required to install and maintain an electronic tracking device within the interior of a vehicle or other conveyance for an extended period of time. The fourth amendment demands nothing less.[16]

■ The fourth amendment requires warrants to particularly describe the place to be searched and the persons or things to be seized. "It is too familiar to require

citation that resistance to the issuance of general warrants, unrestrained as to persons, *times,* or places, supplied much of the incentive for its adoption." *Cady,* 651 F.2d at 291 (emphasis added). Requiring a warrant for only the actual entry into a vehicle necessary for interior attachment of a beeper would provide protection only against the government's initial intrusion into a protected area; such a requirement would do nothing to safeguard against the continual invasion of privacy associated with the beeper's presence. A warrant is necessary not only for the entry into the vehicle and the physical attachment of the beeper in its interior, but also for its continued presence for a period of time therein. To hold otherwise would permit the government to install a tracking device based on ephemeral probable cause and then to leave it in place long after the probable cause became "stale." Therefore, to ensure that no beeper is maintained within the interior of a vehicle for a period longer than that reasonably necessary, the court order authorizing attachment and maintenance must also impose a reasonable time limitation on the beeper's installation. *See Bailey,* 628 F.2d at 945–46; *Curtis,* 562 F.2d at 1156; *United States v. Cofer,* 444 F.Supp. 146, 149–50 (W.D.Tex.1978).[17] *Cf. Berger,* 388 U.S. at

---

illegally present in the interior of a plane, we are reluctant to conclude that this continuing physical intrusion or trespass does not substantially infringe the property rights of the owner or other party having a significant proprietary interest in the plane." *Id.* at 1985. *Parks* foreshadowed our holding today: the illegal presence of a beeper in the interior of a plane does indeed infringe those rights in a fashion that violates the fourth amendment.

**15.** *See Kupper,* 693 F.2d at 1132 n. 2, 1134 (noting that magistrate's order authorizing beeper installation "was limited in duration"); *Parks,* 684 F.2d at 1085 (characterizing beeper's presence in aircraft interior as "continuing physical intrusion or trespass"); *United States v. Brock,* 667 F.2d 1311, 1322 (9th Cir.1982) (" '[T]he [c]ourt cannot countenance the potentially unlimited duration of this type of surveillance [location beepers].' ") (quoting with approval *United States v. Cofer,* 444 F.Supp. 146, 149–50 (W.D.Tex.1978)); *Bailey,* 628 F.2d at 945 & n. 12 (due to absence of termination date in authorizing warrant, beeper's presence could have continued "ad infinitum"); *United States v. Curtis,* 562 F.2d 1153, 1156 (9th Cir.1977)

(expressing need for reasonable time limitations and other reasonable restrictions on beeper use); *United States v. Moore,* 562 F.2d 106, 113 n. 4 (noting that duration of beeper use was limited and cautioning that additional safeguards might be required for extensive periods of beeper installation).

**16.** We leave for another day resolution of the question whether and in what circumstances various exceptions to the warrant requirement would apply. *See* Note, *Tracking* Katz: *Beepers, Privacy, and the Fourth Amendment,* 86 Yale L.J. 1461, 1496–1502 (1977) (suggesting that exceptions to warrant requirement should be available only in rare cases).

**17.** *See also* Note, *Tracking* Katz: *Beepers, Privacy, and the Fourth Amendment,* 86 Yale L.J. 1461, 1505 (1977) ("In order to halt the beeper's invasion of privacy ... an issuing judge should include in the warrant express provisions for regular review of the progress of the search and should limit the absolute duration of the search to the shortest period consistent with demonstrated police needs.").

59–60, 87 S.Ct. at 1883–1884 (electronic surveillance without time limit violates fourth amendment); Omnibus Crime Control and Safe Streets Act, 18 U.S.C. § 2518(5) (1976) (thirty-day limit on electronic wiretapping). Our review of the cases involving beeper installations reflects that such time limitations are familiar restrictions. *See, e.g., Kupper,* 693 F.2d at 1131–32 n. 2 (thirty-day limit); *Parks,* 684 F.2d at 1080 (same); *United States v. Chavez,* 603 F.2d 143, 144 (10th Cir.1979) (sixty days); *United States v. Pretzinger,* 542 F.2d 517, 519 (9th Cir. 1976) (thirty days); *Cofer,* 444 F.Supp. at 149–50 (same).[18]

We are well aware that our holding establishes a standard for interior beeper installation that is different from that required under *Michael* for exterior attachment. In drawing a distinction between the interior and the exterior of a conveyance, we are guided in part by the Supreme Court's disposition of *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974) (plurality). In *Cardwell,* government agents acting without a warrant took paint scrapings from and examined the tire treads of a suspect's car after it had been lawfully impounded by the police. Although the Court permitted the warrantless search based on probable cause, it was careful to distinguish the minimal intrusion at issue with an interior search. *Id.* at 591, 94 S.Ct. at 2469 ("This is not to say that no part of the interior of an automobile has Fourth Amendment protection . . . ."); *id.* ("[N]othing from the interior of the car . . [was] searched or seized and introduced in evidence."); *id.* at 592 n. 8, 94 S.Ct. at 2470 n. 8 ("Again, we are not confronted with any issue as to the propriety of a search of a car's interior."). We believe that both the degree of privacy inherent in the invaded area and the nature, scope, and duration of the government's intrusion mandate the more stringent requirements for interior installation and maintenance of tracking devices that we impose.

## D. The Butts Beeper

Having examined in the abstract the propriety of interior beeper installations, we turn at last to the facts of the case at bar. Initially, one of the agents involved in this case appeared before a U.S. magistrate and obtained a warrant authorizing the agent to install a beeper within the subject aircraft within ten days. The court order further permitted the beeper to be maintained inside the aircraft for thirty days following its installation. During the time period encompassed by this initial warrant, an agent installed the tracking device inside the cabin of the aircraft. Thirty-two days passed; presumably the warrant had expired. Again an agent appeared before the magistrate, requesting an extension of the original order, although he presented no new material facts to support the extension. The magistrate then issued an extension order for an additional thirty-day installation period. This second order allowed the agents to re-enter the aircraft at any time during the thirty-day extension period to make necessary repairs to the beeper and directed its removal no later than August 19, 1981. Nevertheless, the beeper remained on board the aircraft past the court-ordered removal date.[19] On August 22 and 23, 1981, after the period specified in the extension order had expired, the beeper was used to track the aircraft and Butts, its pilot; ultimately the beeper's use led to the discovery of various evidentiary items.

18. In *Michael,* the beeper attached to the van's bumper remained in place only from its installation on August 10 until it was removed at the end of August. *Michael,* 622 F.2d at 746 (panel opinion). Thus, the court did not need to discuss the potential problems that could arise from prolonged beeper installation. The opinion suggests, however, that installation and maintenance of a beeper on a vehicle's bumper is permissible for so long as "reasonable suspicion" continues to exist.

19. The careless practices of the law enforcement agents in this case are particularly disconcerting. The government has offered no explanation for the agents' failure to apply timely for an extension order, nor for their disobedience of the court order requiring the beeper's removal. In the words of the government attorney who appeared at oral argument, "They botched it." We cannot condone such deliberate disregard for an order of the court.

■ The agent's actual entry into the cabin of the aircraft and the physical attachment of the beeper to the interior of the plane were undertaken pursuant to a valid warrant. The problem arises some sixty-four days later, when the beeper remained present in the aircraft after the expiration of the court order authorizing its installation and maintenance. For the reasons stated above, we hold that the continued presence of the beeper inside the plane beyond the time limit specified in the warrant violated the fourth amendment.[20] The court authorized the intrusion for a particular fixed period of time; when the beeper remained in place beyond that period, its presence became constitutionally impermissible. The fruits of this constitutional violation were the signals emitted by the unlawfully placed beeper. Thus, by exploiting the illegality, the government agents were able to track the plane and locate the marijuana and other evidence. Accordingly, the district court properly suppressed the seized evidence. *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[21]

The government argues that the beeper's installation inside the plane beyond the court-ordered time limit is of no consequence and should not require suppression of the evidence to which it led. This is so, the government contends, because under *Michael* the same evidence could have been obtained in a constitutionally permissible manner had the agents merely attached the beeper to the plane's exterior. We are not persuaded by this theory of "alternative availability." While the agents certainly might have proceeded in a lawful and proper manner, the problem here is that they did not do so. Had the government stationed one of its agents in the back of the plane's cabin to broadcast its location, or broken into Butts' home to obtain a copy of his flight plan, surely it would not deny a violation of the fourth amendment on the grounds that the plane's location *could* have been determined in some other, constitutionally permissible, fashion. "[W]hen the government *does* engage in physical intrusion of a constitutionally protected area in order to obtain information, that intrusion may constitute a violation of the Fourth Amendment even if the same information could have been obtained by other means." *Knotts,* 103 S.Ct. at 1087 (Brennan, J., concurring) (emphasis in original).

## IV. CONCLUSION

The high technology, electronic age in which we live highlights and exacerbates the historical tension between liberty and order. In this opinion we have attempted to bestow upon the right to privacy the dignity and primacy that it deserves, while cautioning governmental authorities that obedience to the law is essential lest respect for the law diminish to a point of nonexistence. To permit the government to invade the constitutional rights of its citizens is too high a price to pay for law enforcement. Certainly law enforcement officers must

---

**20.** *United States v. Conroy,* 589 F.2d 1258 (5th Cir.1979), does not compel a different result. *Conroy* involved a confidential DEA informant who carried two beepers aboard a vessel being used to smuggle marijuana from Jamaica to the United States. Instead of keeping the beepers on his person, the informant attached them to the boat while he remained aboard. The court permitted this use of the beepers, construing the situation as one of the smugglers' misplaced confidence in the informant. *Id.* at 1264 (citing *United States v. White,* 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971)). In effect, the court considered *Conroy* to be a case of third-party consent to the beeper installations. Accordingly, it does not control here.

**21.** An alternative approach to the instant facts also supports this result. The initial entry into

the aircraft and attachment of the beeper clearly required a warrant. Here the warrant—in effect a contract between the issuing court and the requesting agent—contained a condition subsequent requiring removal of the beeper on a certain date. That condition was not severable from the rest of the document; rather, it was an integral portion of the authorizing warrant. By violating the condition, the government violated the warrant as a whole. Accordingly, the government's entry into the aircraft and attachment of the beeper were warrantless and invalid under the fourth amendment. The results of the monitoring of the invalidly attached beeper must then be suppressed as the tainted fruits of the constitutional violation. The fourth amendment requires specific performance.

have powers and authorities, but we must be parsimonious and niggardly in opening up the private elements of our lives in the name of catching a marijuana salesman or two. We must be careful not to mutilate the fourth amendment bit by bit and piece by piece, until it is relegated to a position of near obscurity. As the Supreme Court commented in *Boyd v. United States,* 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886):

It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure.... It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.

The fourth amendment has been the individual's shield for decades, one of the primary bulwarks of our liberty and freedom. Few other nations have given their citizens such privileges. Let us be the last to yield them.

For the reasons outlined above, we hold that the fourth amendment requires a warrant for the installation and maintenance of an electronic tracking device within the interior of a vehicle for an extended period of time. The warrant must include a reasonable time limit on the beeper's installation and may contain such other restrictions as the issuing court deems reasonable and necessary. In the instant case, the beeper remained inside the aircraft beyond the time limit established by the court order. Its presence became unlawful when the warrant expired, thereby tainting all the evidence obtained as a result of that violation. Accordingly, the district court's suppression of the evidence obtained as a result of the beeper's continued presence inside the plane was correct, and is hereby affirmed.

AFFIRMED.

CLARK, Chief Judge, dissenting:

A U.S. customs pilot, acting pursuant to a warrant, went inside a plane used by Harold Dean Butts. The agent searched it and planted a beeper tracking device. Butts did not know it was there the day it was installed, during any part of the next sixty-two days when it lawfully remained there, or during the following three days when it

should have been removed under the warrant's terms.

The majority in this case excludes from use at trial the true facts derived from the monitoring of that beeper which revealed Butts' criminal conduct. The exclusion is ordered not because the tracking device was placed in the plane, but because another intrusion was not made into the plane's interior to remove the device. The majority decides this to protect Butts' reasonable expectation of privacy. I cannot comprehend the logic of this reasoning.

The only way Butts' reasonable expectation of privacy becomes legally cognizable is if the monitoring of the beeper signals after the sixty-second day became illegal. The meaning of and rationale for the Supreme Court's holding in *Knotts* are clear: The monitoring of a signal from a beeper on a vehicle operated on public streets is neither a search nor a seizure because the "monitoring" [of] the beeper signals complained of by respondent [did not] invade any legitimate expectation of privacy on his part." 103 S.Ct. at 1087. The monitoring of the beeper as Butts' plane crossed from Mexico into U.S. airspace is not a search or a seizure because the whereabouts of Butts' plane in the open, public airspace used by smugglers and all other aircraft users is not a matter he could expect to keep private. The expiration of the warrant is irrelevant to this expectation.

The majority opinion originates a requirement that any entry into a vehicle (plane, boat or car) to place a beeper requires a warrant based upon probable cause. It also creates a requirement that such a warrant have a time limitation. These two new strictures, originated for fourth amendment protection, should prove meaningless for others similarly situated if officers employing beeper techniques will recall our prior decisions. In *Michael,* we held that no warrant was required for attachment of a beeper to the exterior of a vehicle. In *Conroy,* we held that a government informant could surreptiously plant beepers on a ship if he could gain access to the vessel by subterfuge. Therefore, in the future, officers may avoid the new warrant and time requirements either through the exterior attachment of beepers ala *Michael* or via surreptitious entry ala *Conroy.*

The majority also seeks to bolster its view with precisely the same twenty-four hour

dragnet surveillance "bug-a-boo" which *Knotts* expressly rejected. *Id.* at 1086. It certainly does not fit the facts of this case. The signals that revealed Butts' illegal activity were monitored three days after the warrant-authorized surveillance period. The rule the majority establishes is that tracking during days covered by the warrant is not a search or seizure, but the tracking on the sixty-third day somehow becomes a search and seizure. I cannot comprehend how the transformation from "no search" to "search" occurs when all that has happened is that an officer has not reentered the airplane to remove the beeper.

There simply is no fourth amendment right in any way implicated in the failure to remove the beeper installed in this plane. Because there is not, it is altogether wrong to punish the public by denying it validly acquired information of criminal drug activity. The officers who violated the court's order to reenter the plane and remove the beeper are liable in contempt to the court whose order they infringed. Butts was not a victim of that infringement. Indeed, had they complied and again entered the airplane they may have come in view of other evidence of criminal activity. Butts surely had no interest in the reentry and removal of the beeper except to stop the transmittal of signals. Because *Knotts* teaches that the monitoring of the signals constituted neither a search nor a seizure, I respectfully dissent.

## ON SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, BROWN, GOLDBERG, GEE, RUBIN, REAVLEY, POLITZ, RANDALL, TATE, JOHNSON, WILLIAMS, GARWOOD, JOLLY and HIGGINBOTHAM, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc without oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.